[No. 11664.   In Bank. — April 26, 1888.]

FRANCIS HUNT, APPELLANT, v. B. F. STEESE ET AL., RESPONDENTS.

INJUNCTION — WASTE WHEN RESTRAINED PENDENTE LITE — EJECTMENT. — In an action of ejectment, the plaintiff is entitled to an injunction to restrain the defendant from committing irreparable waste on the demanded premises pending the determination of the issue as to ownership, unless it appears that the title of the plaintiff is bad, or at least, that there is no reasonable ground for the assertion of title by him. The mere existence of a doubt as to the title does not of itself constitute a sufficient ground for refusing the injunction.

ID. — ORDER REFUSING INJUNCTION — APPEAL — RECORD — FINDINGS. — On an appeal from an order refusing an injunction, it is not necessary to specify in a bill of exceptions the particulars in which the evidence is alleged to be insufficient, nor is the lower court required to make findings in support of the order. The appeal is heard upon the papers used on the hearing in the lower court; and the testimony of witnesses contained in the record, and identified by the judge as having been given on the hearing, will be treated on the appeal as written affidavits.

RAILROAD GRANT — MINERAL CHARACTER OF LAND HOW DETERMINED. — A person claiming under a mineral location, to be entitled to the possession of land previously patented to the Central Pacific Railroad Company, in pursuance of the grant made to that company by the act of Congress of July 1, 1862, and the amendment thereto of July 2, 1864, in order to establish his right of possession as against a person claiming under the patent, must clearly show that at the date of the patent the land, under the conditions then existing, was more valuable for mining than for agri-

culture, and was known to be such. And in determining the relative value of the land for such purposes, subsequent changes in the conditions affecting it cannot be considered.

APPEAL from an order of the Superior Court of Yuba County refusing an injunction.

The facts are stated in the opinion of the court.

*Forbes & Dinsmore,* and *W. C. Belcher,* for Appellant.

Upon the whole evidence, the plaintiff is entitled to the injunction applied for, as the facts show that the defendants have committed irreparable waste, and threaten to continue so doing. (Code Civ. Proc., sec. 526, subd. 2; *Boggs* v. *Merced Mining Co.,* 14 Cal. 379; *Henshaw* v. *Clark,* 14 Cal. 460; *Hess* v. *Winder,* 34 Cal. 270.) In order to entitle him to an injunction *pendente lite,* the plaintiff is not required to make out a clear legal title; it is sufficient for him to show a *prima facie* case on that point. (Kerr on Injunctions, 2d Am. ed., 13, and cases cited; *Hess* v. *Winder,* 34 Cal. 270; *Le Roy* v. *Wright,* 4 Saw. 535; *Henshaw* v. *Clark,* 14 Cal. 460.) In order to defeat the plaintiff's patent, it was necessary to show that the lands were, at the date of the grant, more valuable for agriculture than for mining, and that the grantee knew that fact at least as early as the date of the selection; and it is not sufficient to show that the land contains some measure of gold or silver, or that it had theretofore or has since been profitably worked, or that it might be profitably worked under other and more favorable conditions and circumstances than those which actually exist. (*United States* v. *Reed,* 28 Fed. Rep. 482, 486; *Deffeback* v. *Hawke,* 115 U. S. 404; *Ah Yew* v. *Choate,* 24 Cal. 562; *McLaughlin* v. *United States,* 107 U. S. 526.)

*J. H. Craddock,* for Respondents.

The plaintiff did not have an absolute right to an injunction *pendente lite.* The matter rested in the sound

discretion of the court, and the exercise of such discretion will not be reviewed on appeal. (High on Injunctions, sec. 16; *De Godey* v. *Godey*, 39 Cal. 151; *Richards* v. *Dower*, 64 Cal. 62; *Patterson* v. *Supervisors*, 50 Cal. 344; *Coolot* v. *C. P. R. R.*, 52 Cal. 65; *Efford* v. *S. P. R. R.*, 52 Cal. 277; *McCreery* v. *Brown*, 42 Cal. 461.)

PATERSON, J.—Ejectment. Plaintiff moved for an injunction *pendente lite*, restraining the defendants from washing away the soil for mining purposes. The court granted a temporary restraining order, but on the hearing of the motion, refused to grant an injunction, and the order first made was revoked.

On the hearing plaintiff introduced his verified complaint, and a patent for certain lands, including the lands in controversy, from the United States to the Central Pacific Railroad Company, issued under a grant to that company by act of Congress passed July 1, 1862, and the amendment thereto of July 2, 1864. This patent is dated February, 1875, and contains, after the granting clause, the following provision: "Yet excluding and excepting from the transfer by these presents all mineral lands, should any be found to exist in the tracts described in the foregoing." Plaintiff also introduced in evidence a deed from the Central Pacific Railroad Company to himself, dated June 5, 1883, conveying the lands in controversy. This deed contains, after the description, these words: "Reserving, however, all claim of the United States to the same as mineral land." It was shown by the plaintiff that he went into possession of the lands granted in 1877, and had used the lands for grazing purposes. In the winter of 1883–84 the land was inclosed by plaintiff with a fence. He testified that the defendants had deprived him of the use of the land since the fall of 1884; that the defendants were mining and digging up and washing away good soil without authority. It was shown on behalf of the defendants that they had filed a

notice of location under the Revised Statutes of the United States, and had complied with the local mining laws and regulations; that they had entered upon the land for mining purposes under their claim of right. They were permitted, against the plaintiff's objection, to introduce patrol testimony to show that the land was mineral land, and the court found "that at the time the patent of the United States issued to the plaintiff's grantor, the land in controversy was known, and had been for several years prior thereto, to be valuable for minerals. That being the fact, no title to said land passed by said patent to plaintiff's grantor, and of course none passed to plaintiff from the deed from said company." The court denied the application for an injunction, upon the ground stated. The complaint alleged in substance that the plaintiff was the owner of the land; that the defendants were trespassing on his possession, washing away the soil, and removing gold therefrom; that they were insolvent, and threatened and intended to continue their trespasses; that the land is valuable for agricultural and grazing purposes; that defendants are "stripping away from its natural places of deposit the alluvium deposits of the soil, plowing up the soil, and scraping and piling it up to make reservoirs on the land, and digging ditches on the land to carry water to wash the soil therefrom."

The defendants filed no answer, but introduced affidavits and the testimony of witnesses showing that the land was valuable for mining purposes at the time of the issuance of the patent; that it had been profitably worked for gold, and was well known to be mineral in character. They did not deny that they were washing away the soil for gold, or that they were insolvent, or that they intended to continue their mining operations, or that the injury was irreparable.

We think that the injunction should have been granted. It is unnecessary for us to determine on this appeal whether we shall adhere to the rule of decision that a

patent may be collaterally attacked under such circumstances. In all cases of this kind an injunction should be granted pending the determination of the issue as to ownership, unless it appear that the plaintiff's title is bad, or at least, that there is no reasonable ground for the assertion of title by the plaintiff. The mere existence of a doubt as to the title does not of itself constitute a sufficient ground for refusing an injunction. (Kerr on Injunction, 2d Am. ed., 13; *Hess* v. *Winder*, 34 Cal. 270.)

"It is the common practice at this day for the court to issue injunctions where the title is in dispute. . . . . The jurisdiction of the court in these cases is asserted for the preservation of the property pending proceedings at law for the determination of the title of the parties." (*Le Roy* v. *Wright*, 4 Saw. 535.) "The injuries which are the subject of complaint are of a character calculated to destroy the entire value of the land for all useful purposes. Those which consist in excavating ditches and digging up the soil are irreparable in the sense that the former condition of the property could not probably be restored without an expenditure exceeding the original value of the land. . . . . A denial of the preventive remedy by injunction in such case would be tantamount to a denial of all protection." (*Henshaw* v. *Clark*, 14 Cal. 465.)

Not only should there be an answer to the merits, but it should be made reasonably certain by the pleadings and the affidavits that the attack upon the patent will be ultimately successful, or the injunction should be granted. Such is not the case here. It is not sufficient to show that the land had been profitably worked for gold prior to the issuance of the patent. It should clearly appear that the lands were at the date of the grant more valuable for mining than for agriculture, and were known to be such; that they were more valuable under the conditions existing at the time of sale for

mining than for agricultural purposes. (*Colorado C. & I. Co.* v. *United States,* 123 U. S. 307.)

In the case at bar the plaintiff's patent made for him a *prima facie* case as to title, and the most that is shown by the defendants is that the land is now, and was prior to the issuance of the patent, valuable for mining purposes *when water could be had to work it.* It was shown that from 1864 until after the patent had been issued no mining of any importance had been done for want of water. One witness for the defendant testified that "after 1864 there was no water there to work with, except from rains, and it took very heavy rains to accumulate water sufficient to amount to anything."

That water has since been secured for the purpose of working the land cannot be taken into consideration in determining the rights of the parties. Present contingencies or probabilities have no bearing upon the question. (*United States* v. *Reed,* 28 Fed. Rep. 486.) The issue is confined to the time when the lands were sold and patented by the government. "It is quite possible that land settled upon as suitable only for agricultural purposes, entered by the settler, and patented by the government under the pre-emption laws, may be found years after the patent has been issued to contain valuable minerals. Indeed, this has often happened. We therefore use the term "known" to be valuable at the time of sale to prevent any doubt being cast upon titles to lands afterwards found to be different in their mineral character from what was supposed when the entry of them was made and the patent issued. (*Deffeback* v. *Hawke,* 115 U. S. 404.) If, on account of the absence of water and sources of water, the lands in controversy were not more valuable for mining purposes than for agricultural purposes at the time of the sale, we think that the same principle should be applied, and the fact that other sources of water supply have been discovered, or become accessible, and can now be used in the profit-

able working of the mines, should not operate to the prejudice of the plaintiff, whose rights to the land were determined upon the conditions existing at the time of the sale. If it were otherwise, "the proprietor would never be secure in his possessions, and without security there would be little development, for the incentive to improvement would be wanting. What value would there be to a title in one man with a right of invasion in the whole world," upon a subsequent change in the conditions, contingencies, or probabilities? (*Boggs* v. *Merced M. Co.*, 14 Cal. 380.)

But however that may be, unless under such circumstances as we find here it be held that the plaintiff under his patent is entitled to an injunction until the question of the character of the land is determined in the action, "the spoliation of landed estates under the pretense of mining without possibility of protection or redress on the part of the owner" will follow.

This appeal is from an order revoking the temporary restraining order and refusing an injunction; it is unnecessary, therefore, to specify in the bill of exceptions the particulars in which the evidence is alleged to be insufficient. The court is not required to file findings in a matter of this kind. Motions for injunction are regularly heard upon complaint, answer, and affidavits, and no bill of exceptions is necessary, unless it be to identify the papers used on the hearing. The appeal is heard upon the papers used on the hearing in the court below. (Code Civ. Proc., sec. 951.) The testimony of witnesses which we find in the record we treat as written affidavits, identified by the judge, and as such to be considered by this court in the same manner as if in the form of affidavits.

It follows from the views expressed above that the order refusing to grant an injunction should be reversed, and the court below be directed to issue the injunction asked for by the plaintiff until the final hear-

ing, when the propriety of either dissolving it, or of rendering it perpetual will be determined according to the merits of the case.

Ordered accordingly.

McFARLAND, J., SEARLS, C. J., and McKINSTRY, J., concurred.