[S. F. No. 10080. In Bank.—September 7, 1923.]

FELIPPO ROFFINELLA, Appellant, v. CAROLINE ROFFINELLA et al., Respondents.

[1] CONTRACTS—AGREEMENT FOR LEASE—INSUFFICIENCY OF EVIDENCE. In this action to compel specific performance of an alleged agreement for the execution of a lease by the defendants to the plaintiff of certain ranch property, it is held that the evidence sustains defendant's contention that the lease was not to include all of the premises sought by plaintiff, but that the residence and its immediate appurtenances were to be reserved from the lease, and therefore the trial court was constrained to deny plaintiffs' prayer for specific performance of an alleged agreement for a lease of the entire premises.

[2] ID.—PERFORMANCE—TENDER—CONDITIONS.—Under section 1494 of the Civil Code, an offer of performance must be free from any conditions which the creditor is not bound on his part to perform.

191 Cal.—48

[3] ID.—SPECIFIC PERFORMANCE — ACTION FOR — JUDGMENT IN EJECT-
MENT.—In an action for specific performance of an alleged agree-
ment to execute an oral lease, in which the defendant interposed
a cross-complaint in ejectment, notwithstanding the form of ac-
tion for specific performance is equitable in its nature and that
in ejectment is legal in its aspect, the court has power to enter a
judgment in ejectment.

APPEAL from a judgment of the Superior Court of
Santa Clara County. J. R. Welch, Judge. Affirmed.

The facts are stated in the opinion of the court.

Rea, Cassin & Caldwell, Courtney L. Moore, William B.
Hornblower and Fabian D. Brown for Appellant.

William F. James and Charles J. Heggerty for Re-
spondent.

LENNON, J.—This is an action to compel specific per-
formance of an alleged agreement for the execution of a
lease by the defendants to the plaintiff of certain ranch
property. The controversy involves the question of whether
or not an oral agreement, claimed to have been partially
executed, for a lease of the entire premises was entered into
between the plaintiff and the defendants or whether the
negotiations of the plaintiff and the defendants constituted
no more than a mere offer, by the defendants, to lease to
the plaintiff only a portion of the premises in controversy,
which offer, it is claimed, was never accepted by the plain-
tiff.

Upon the trial of the case the court below found against
the contention of the plaintiff that an agreement had been
entered into. The findings of the trial court are in effect
that the plaintiff and defendants did not enter into a verbal
agreement as set forth in plaintiff's complaint nor into any
agreement at all, but, on the contrary, that the result of the
negotiations between the plaintiff and the defendants was
that "about November 1, 1919, Cesare Roffinella verbally
offered to lease to plaintiff, for a period of five years, at an
annual rental of nineteen hundred dollars, the said lands
excepting therefrom, however, the residence building of said
defendants, the garage, woodshed, tank-house, situate thereon,
and the garden and land from said tank-house to the county

road, and on such terms and conditions as might thereafter be mutually agreed upon.'' From the judgment in favor of defendants and cross-complainants denying specific performance and decreeing restitution of the premises to the defendants, plaintiff appeals.

Substantially stated, the facts out of which the controversy arises are these:

Cesare Roffinella, respondent herein and defendant and cross-complainant below, is the owner of a vineyard and orchard consisting of about eighteen acres of land near Gilroy, in the county of Santa Clara. On a portion of this ranch is located his residence with the appurtenances, to wit, a garage, a woodshed, a tank-house, and a garden. In October, 1919, Cesare Roffinella made a visit to his cousin, Felippo Roffinella, appellant here and plaintiff below, who was then residing in the city of Santa Clara. On that visit Cesare inquired of Felippo Roffinella if he would care to rent the ranch at Gilroy. This was merely a general offer and no agreement or arrangements of any kind were entered into at that time.

On November 10, 1919, Felippo visited Cesare on the ranch at Gilroy and arrangements for the leasing of the property were then discussed. According to the testimony of Cesare Roffinella, Felippo was to lease the ranch with the exception of the house, tank-house, woodshed, and the piece of land from the tank-house to the county road, for a period of five years at an annual rental of nineteen hundred dollars, one-half of which was to be paid in January and the remaining half in October of each year. Felippo was to buy certain personal property, horses, harness, and implements and was to return to Cesare in as good condition as he received them certain other personal property to be inventoried.

The next day the defendant Cesare and Felippo with their wives went to an Italian scrivener, Carbignano by name, to have him draft a memorandum of the personal property which Felippo was to buy and a list of the personal property of which he was to take charge. Cesare had written down in a memorandum-book a list of the personal property, the amount of the rental, and the period of time for which he offered to lease the property. Carbignano used this list as a basis for his memorandum. It is an undisputed fact in the case that the understanding of both parties was

that this writing by Carbignano was to be merely a tem-
porary memorandum and that later the parties were to go
to a lawyer and have the lease made out in proper form.

The defendant Cesare testified that while at Carbignano's
he again mentioned to Felippo the fact that he, Cesare, in-
tended to reserve a portion of the premises for his own use.
It was also the understanding of Carbignano that the reser-
vation of the house and the appurtenances thereto was to be
made by Cesare. Carbignano did not, however, include the
provision as to the reservation in the memorandum. Cesare
at the time he received the memorandum noticed the omis-
sion but made no objection because, as he understood it, the
memorandum was but a temporary memorandum and was
not a lease. The next day Cesare drove Felippo and his
wife home to Santa Clara in his machine. Felippo then
gave Cesare two checks totaling fifty dollars, which Cesare
claims was in part payment on the personal property to be
purchased by Felippo, but which Felippo claims was given
by him to Cesare to bind the contract or lease.

On or about January 20, 1920, Felippo and his wife moved
to the ranch at Gilroy. Felippo at this time paid to Cesare
four hundred dollars on account of the rent and signed the
temporary memorandum previously made out by the Italian
scrivener, Carbignano. Cesare did not sign the memoran-
dum. Felippo and his wife moved into a house near the
winery which had been constructed for them by Cesare and
Cesare and his wife continued to occupy their old residence.

In June Cesare went to Carbignano and had him make out
a new memorandum which included an agreement covering
the reservations. Cesare then asked Felippo to go with him
to an attorney and have the lease made out as they had
agreed. Felippo, however, refused to go upon the plea that
he did not have time. Cesare several times thereafter re-
quested Felippo and his wife to go with him to an attorney
to sign a lease, but Felippo persistently refused, making the
excuse that there was plenty of time and refusing to look at
the new memorandum.

In January, 1921, Cesare again requested Felippo to go
with him to have the lease executed and at that time Felippo
informed Cesare that he did not want the lease as made out
from the second memorandum made by Carbignano but that
he wanted the lease as set forth in the first memorandum; that
if Cesare would make the lease according to the first memo-

randum, "it would be all right, otherwise he would not go to have the lease made out." Cesare treating this refusal as final, on January 20, 1921, caused to be served upon Felippo a notice to terminate the tenancy, which was ignored by the plaintiff, who thereupon filed suit for the specific performance of the lease. Answering plaintiff's complaint, the defendant Cesare denied all the material allegations thereof and having elected to consider plaintiff as a tenant at will, interposed a cross-complaint in ejectment.

Plaintiff's verified complaint, after setting forth a description of the entire premises by metes and bounds, alleges that "plaintiff and defendant entered into a verbal agreement whereby the said defendant agreed to lease *all* of said premises to the plaintiff," and that thereafter, in compliance with said verbal understanding "a *lease* in Italian language was written under the direction of both parties." A translation of the original memorandum is attached to said complaint as a "correct translation of said *lease.*"

[1] The evidence adduced in support of defendant's case sustains the contention of the defendant that the lease was not to include all of the premises, but that the reservations in question were to be included in the lease when it was to be finally executed. There is the direct testimony of Cesare and his wife to the effect that the residence and its immediate appurtenances were to be reserved from the operation of the lease. This testimony was in a measure corroborated by the scrivener, Carbignano, and his wife. And the testimony of Cesare in this behalf was further strengthened by evidence of the fact that a new house was erected by Cesare for Felippo and his wife, which obviously would have been unnecessary if Cesare had not reserved to himself the use and occupation of his original residence. Furthermore, there is not in the testimony of either Felippo Roffinella or his wife an express denial that the reservations were to be included in the lease. In fact, it is now conceded by the plaintiff that a portion of the premises was to be reserved from the operation of the lease. That the offer by Cesare was to lease the ranch only upon condition that the reservations be included therein may, therefore, be taken as an established fact in the case. It follows, as a matter of course, that the trial court was constrained to deny, as it did, the prayer of plaintiff's complaint that the defendant be compelled to specifically perform the agreement pleaded

and purporting to be one for the lease of the *entire* premises. (*Slater* v. *Howie,* 49 Kan. 337 [30 Pac. 413]; *Magee* v. *McManus,* 70 Cal. 553 [12 Pac. 451].)

It is, however, argued by the plaintiff that although the evidence did not disclose the existence of the particular agreement pleaded in plaintiff's complaint, nevertheless the court had the power in the equitable action of specific performance to inquire as to what the real agreement of the parties was, and then specifically enforce it; or that, in any event, and at the very least, such an agreement might have been found to have been partially executed, and, when found, would have constituted a good defense against the cross-complaint in ejectment. Of course, it goes without saying that in order to make an effective agreement there must be a meeting of the minds of the parties in one accord as to all the terms of the agreement. The agreement which the plaintiff in the instant case pleads and relies upon in the first instance is that expressed by the written memorandum attached to and made a part of the plaintiff's complaint, and it was his contention, in effect, in the court below, as it is his contention here, that that memorandum contained all of the terms of the agreement in suit save and except the one for the execution of a written lease, and that the execution of this particular memorandum of the agreement would have satisfied that condition. Now, the defendants' understanding of the contractual relation and situation of the parties differs from that of the plaintiff in so far as it relates to these particulars: (1) The premises included or reserved; (2) the character or purpose of the written memorandum; (3) the finality of the agreement as to the terms that were agreed upon; (4) the inclusion of additional terms, such as nonassignability, etc.; and (5) the execution of a written lease different from the memorandum, including all the terms when they were agreed upon. The written memorandum in question calls for "vineyard and fruit ranch of about eighteen acres, house of three rooms with water, winecellar, and appurtenances for the same," and no exception or reservations are mentioned. The plaintiff's verified complaint prays for all of the said premises, referring to an exact description by metes and bounds of the entire premises, and likewise without any reservations or exceptions.

Plaintiff testified that he rented all of the property and that nothing had been said about the defendants' house.

The plaintiff's wife testified to the same effect. Upon the hearing last had before this court for a resubmission of the cause for further argument upon the issue of ejectment raised by the cross-complaint and the answer thereto, it was suggested from the bench that perhaps the written memorandum might be construed as allowing the defendant the reservation of his house and garden because it purported to lease only a vineyard and a fruit ranch of about eighteen acres and a house of three rooms. It will be noted, however, that the reservations which the defendant claimed included a part of the vineyard itself. The defendant testified that he told the plaintiff on the occasion of their first conference concerning the execution of the lease that he was reserving "the house, the tank-house and garage, woodshed, and the piece of land surrounding the house all the way over to the County Road." The defendant's wife also testified that there were to be reserved to the defendants "the tank-house, garage, woodshed, garden all around the house, and also the piece of vineyard that follows around the house and winds up in the County Road."

Thus, it is apparent that if the trial court had the testimony last referred to in mind when making its findings, it could not have construed the written memorandum as meaning and intending to except all of defendants' reservations, nor that it was intended to express the defendants' understanding of the proposed agreement with the plaintiff. Moreover, it is obvious from the plaintiff's verified complaint demanding all of the premises, and his persistent insistence upon the execution of this written memorandum and none other, coupled with the testimony of the plaintiff and his wife, that he was either repudiating the agreement as to the reservations or else his mind and that of the defendants' never met as to the extent of the premises, which were to be included within the terms of the lease. The latter alternative was the one evidently adopted by the trial court, and as it is a conclusion reasonably deducible from a clear-cut conflict in the evidence, it will suffice to support the findings of the lower court upon the issue raised by the pleadings in ejectment.

The trial court found that plaintiff had tendered to defendant the rental remaining due only upon the condition that the defendant execute the written agreement containing the terms of the contract which he, the plaintiff, insisted had

been agreed upon by them. Since the plaintiff insisted that the agreement was to lease the entire premises, this was in effect a tender upon the condition that the defendant execute to plaintiff a lease of the entire premises without any reservations. The plaintiff was not entitled to make his tender conditional upon the execution by defendant of such a lease. [2] Section 1494 of the Civil Code provides that an offer of performance must be free from any conditions which the creditor is not bound on his part to perform. The cross-complainant, therefore, was entitled to treat the plaintiff as a tenant at will, and the time designated in the notice of termination of tenancy having expired, he was entitled to sue in ejectment.

[3] It is further contended by plaintiff that in any event a judgment in ejectment, which is legal in its aspect, could not be rightfully sought and secured in an action to enforce specific performance which is equitable in its nature. Authorities dealing directly with modern statutory cross-complaints and prescribing when and for what purpose they may be interposed are quite meager and unsatisfactory, but the principle which covers and controls the interposition of a cross-complaint is to be found in section 442 of the Code of Civil Procedure. This section provides that when the defendant seeks affirmative relief "relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates," he may file a cross-complaint. The cause of action pleaded in the cross-complaint in the instant case certainly did relate to, arise out of and depend upon the transaction which was made the basis of the plaintiff's action for specific performance and, certainly, it must be considered as "affecting the property to which the transaction relates." In short, the subject matter of the cause of action pleaded in the plaintiff's complaint and the relief sought by the cross-complaint was intimately connected with the matter involved in the principal action. Consequently we are unable to conceive why, even though the cross-complaint covered and controlled an action which was legal in its nature, it could not be interposed in an action seeking to enforce the making of a lease, and thereby bring about a complete adjudication of the entire subject matter involved in both the original and cross-complaint. It is difficult to perceive a more natural and appropriate proceeding for the

expeditious adjudication of litigation arising out of a single transaction.

Judgment affirmed.

Waste, J., Myers, J., Wilbur, C. J., Kerrigan, J., Seawell, J., and Lawlor, J., concurred.

Rehearing denied.

The court filed the following opinion on October 6, 1923:

THE COURT.—The appellant's petition for a rehearing is based upon the contention that there is no foundation for the award of one thousand dollars' damages. His argument is that he deposited nineteen hundred dollars with a bank in the name of the respondent; that this covered the full rental value of the property, and the additional judgment for one thousand dollars was, therefore, erroneous. It is sufficient to say that the nineteen hundred dollars having been conditionally tendered and deposited does not belong to the respondents, but remains the property of the appellant. The one thousand dollars thus included in the judgment was for the rental value of the premises. This, we may say, is the view taken by the respondents in their answer to the petition for a rehearing.

Petition for a rehearing is denied.