[Civ. No. 17113.   First Dist., Div. One.   June 19, 1957.]

IRWIN I. LENARD et al., Respondents, v. JAMES A. EDMONDS, Appellant.

Fitzgerald, Abbott & Beardsley for Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, and Goldstein, Barceloux & Goldstein for Respondents.

PETERS, P. J.—In January of 1953 the plaintiffs purchased a Berkeley motel from defendant James Edmonds for $100,000. To secure part of the purchase price they gave Edmonds their promissory note secured by a deed of trust, and also in partial payment gave Edmonds certain notes of third parties payable to them, which notes were secured by deeds of trust on property other than the motel. In October of 1954 plaintiffs brought the present action, the complaint containing two causes of action, one for rescission and the other

for damages.* Prior to trial plaintiffs sought and secured a preliminary injunction restraining defendant from disposing of the third party promissory notes and deeds of trust above mentioned, and restraining defendant from taking any action under a notice of default and election to sell given on the deed of trust on the motel property. Over defendant's objection plaintiffs were granted a jury trial on the second cause of action—the one for damages. After selection of a jury, and prior to the opening statements, and over the objections of defendant, plaintiff was granted permission to abandon the rescission cause of action and to proceed solely on the damage cause of action. The jury returned a general verdict for plaintiffs in the sum of $32,673.70. The trial court then continued the preliminary injunction in effect, ordered that the promissory note of third parties then in the possession of the court should be delivered to plaintiffs, and that this should constitute part payment of the judgment, and entered judgment for the balance. Edmonds appeals.

Edmonds attempted to appeal on a limited transcript. He has limited his appeal to points other than the sufficiency of the evidence. Respondents insisted on a complete transcript. Appellant makes three major contentions. (1) That by securing the preliminary injunction respondents, as a matter of law, made an irrevocable election to proceed on the equity cause of action; (2) that the second cause of action, on which the cause was tried, was, in fact, an equitable cause of action on which the court was required to make findings; and (3) that there was error in failing to give a proffered instruction.

The main contention of appellant is that respondents, necessarily, secured the preliminary injunction pursuant to the equitable cause of action for rescission, and that having so proceeded, they made an irrevocable election of remedies that precluded them from proceeding on the legal cause of action for damages. Appellant states his position as follows (App. Op. Br. p. 7): "We do not contend that the mere filing of an action for rescission, without more, constitutes an election, nor that the mere filing of a suit containing two causes of action, one for rescission and the other for damages, constitutes an election. We do contend, however, *first,* that rescission and damages are inconsistent remedies, and, *second,*

---

*Plaintiffs originally joined other defendants in addition to Edmonds. Some of these were exonerated by the jury, and, as to the rest, all but Edmonds were granted a new trial. The present appeal involves Edmonds as the sole appellant.

768

that whenever a party performs an act in pursuit of one remedy whereby he has gained any advantage over the other party he will be deemed to have made an election of remedy and will not be entitled thereafter to pursue any other inconsistent remedy for the enforcement of his right.''

There can be no quarrel with the general principles stated by appellant. ■ It is clearly the law that rescission and damages are alternative remedies, and that an election to pursue one is a bar to the other. (*Alder* v. *Drudis*, 30 Cal.2d 372 [182 P.2d 195].) ■ It is also undoubtedly the law that where a person entitled to one of two inconsistent remedies performs some act in pursuit of one of the alternative remedies by which he gains an advantage over the other party, on the principles of estoppel, he will be held to have made an irrevocable election of remedies. (*De Laval Pac. Co.* v. *United C. & D. Co.*, 65 Cal.App. 584 [224 P. 766]; *Steiner* v. *Rowley*, 35 Cal.2d 713 [221 P.2d 9]; *Acme Paper Co.* v. *Goffstein*, 125 Cal.App.2d 175 [270 P.2d 505].) It is this rule that appellant seeks to invoke here. The questions are: When a plaintiff in the same complaint sues for a rescission and for damages, which he may admittedly do, is the securing of a preliminary injunction of the type here involved an irrevocable election to proceed solely on the rescission action? Could the preliminary injunction only have been granted as an incident to the rescission action, or could it have been granted under the facts here involved as an incident to the action for damages?

We think that the answers to these questions are clear. ■ Under the facts alleged, respondents were entitled to the preliminary injunction as an incident to either or both causes of action. This being so, applying for and securing such an injunction could not possibly constitute an election to proceed on either one. ■ Of course, where, as here, a person has two inconsistent remedies, some place before judgment, he must elect which remedy he desires to pursue, and once he elects he is precluded from pursuing the other remedy. (See generally, 1 Witkin on California Procedure, § 46, p. 542.) ■ But, under the modern view, before an election will be held to have been made, all the elements of an estoppel must be present. (1 Witkin on California Procedure, § 51, p. 548; § 56, p. 554.) Thus, it has been stated that the ''doctrine [of election] is based on estoppel and, when applicable, operates only if the party asserting it has been injured.'' (*Pacific Coast Cheese, Inc.* v. *Security-*

*First Nat. Bank,* 45 Cal.2d 75, 80 [286 P.2d 353].) ██ Obviously, if the preliminary injunction could have been secured as an incident to either cause of action, the securing of it could not have injured appellant, and thus could not be the basis of an estoppel. As a result there was no election of remedies.

██ While preliminary injunctions of the type here involved are more frequently granted in equitable proceedings such as rescission, there is no legal obstacle to the granting of such an injunction in a purely legal action for damages. Particularly is this so in a legal action like the present one where appellant was threatening to negotiate the third party notes given as partial consideration, and had started proceedings to sell the motel under the deed of trust. Obviously, it was reasonably necessary and fair to both sides to maintain the *status quo* pending the outcome of the litigation. Otherwise, appellant could have deliberately stripped himself of all assets and made it impossible for him to pay any judgment that might be secured.

██ The statute relating to preliminary injunctions does not limit its operation to equitable proceedings. Section 526 of the Code of Civil Procedure provides that such an injunction may be granted "3. When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual." Here, it was alleged that appellant was threatening to sell the property which was the basis of the action and threatening to transfer the third party notes given in partial payment for the property. If these acts were allowed to be completed appellant might well render himself unable to pay the judgment, if one were secured, and deprive respondents not only of the fruits of the judgment but also of the motel property. Thus, the precise situation contemplated by the code section was present.

There seems to be but little authority on the subject of whether preliminary injunctions can be secured as an incident to a legal action. But there is some authority on the subject. ██ Thus, an action for ejectment is a purely legal action. (*Roffinella* v. *Roffinella,* 191 Cal. 753 [218 P. 397].) As an incident to such an action it is permissible to issue a preliminary injunction to restrain the defendant from committing waste. (*Hunt* v. *Steese,* 75 Cal. 620 [17 P. 920].) The

United States Supreme Court has held that a federal district court may issue a temporary injunction whenever necessary "for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." (*United States* v. *United Mine Workers,* 330 U.S. 258, 290 [67 S.Ct. 677, 91 L.Ed. 884]; for a general discussion of the problem see 1947 Annual Survey of American Law 803, 807; *Daniels* v. *Williams,* 125 Cal. App.2d 310 [270 P.2d 556]; *Stockton* v. *Newman,* 148 Cal. App.2d 558 [307 P.2d 56]; *Ahlers* v. *Smiley,* 11 Cal.App. 343 [104 P. 997]; *Ahlers* v. *Smiley,* 163 Cal. 200 [124 P. 827].)

Appellant, in attempting to establish that the securing of the preliminary injunction constituted an election to proceed on the rescission action, relies on the cases that hold that the securing of an attachment in pursuit of contractual remedy ordinarily operates as an election to proceed under the contract count and estops the plaintiff from seeking relief on a tort theory of liability. (*Steiner* v. *Rowley,* 35 Cal.2d 713 [221 P.2d 9]; *Jones* v. *Martin,* 41 Cal.2d 23 [256 P.2d 905]; *Estrada* v. *Alvarez,* 38 Cal.2d 386 [240 P.2d 278]; *Acme Paper Co.* v. *Goffstein,* 125 Cal.App.2d 175 [270 P.2d 505]; *Gedstad* v. *Ellichman,* 124 Cal.App.2d 831 [269 P.2d 661].) Even this rule is not an absolute one. It has been held that under some circumstances the issuance of a writ of attachment pursuant to one cause of action does not constitute a binding election not to proceed under a second non-attachable cause of action. (*Crag Lumber Co.* v. *Crowfoot,* 144 Cal. App.2d 755 [301 P.2d 952].) But the contract-tort-attachment rule is not here applicable. In a contract-tort complaint the attachment, which is statutory, may be secured only on the contract cause of action. It is not available on the tort cause of action. Thus, the securing of the attachment could relate only to the contract cause of action. The securing of it injured defendant and therefore constituted an election of remedies. But, as already held, since the preliminary injunction could have related to either cause of action, the securing of it was not an unequivocal election to proceed on either of the causes of action.

Appellant does cite one case where the securing of an injunction was held to constitute an election—*Frederickson* v. *Nye,* 110 Ohio St. 459 [144 N.E. 299, 35 A.L.R. 1163]. There, about six months prior to the commencement of the second action, plaintiffs brought an action for deceit, and obtained an order restraining defendants from disposing of

the property involved. This proceeding was dismissed without prejudice. Defendants then conveyed the property to Frederickson. Plaintiffs then brought a second action seeking to enforce a trust against the original defendants and Frederickson. It was held that the two actions were inconsistent, and that by securing the injunction in the first action plaintiffs had irrevocably elected their remedy because defendants had suffered a serious detriment. The ruling is a questionable one. (See criticism in 34 Yale Law Journal 665.) But even if correct, it is not here applicable. Here, there were not separate complaints. Both causes of action were set forth in one complaint. The injunction could have been secured on either. This being so, the securing of it could not constitute an election of remedies.

The second contention of appellant is that the second cause of action was not a simple one for damages but was, in fact, one for a *pro tanto* rescission, and was therefore equitable in nature. Appellant refers to allegations in that cause of action requesting a reconveyance of the third party promissory note and deeds of trust given as part of the consideration for the purchase price, and to the allegations requesting cancellation of the note, deed of trust and chattel mortgage on the motel and its contents. It is urged that these allegations converted the second cause of action for damages into an equitable action in which the trial court was required to make findings.

Of course, if the second cause of action was equitable the jury verdict was merely advisory, and the trial court should have made findings, which it did not do. (*Trubowitch v. Riverbank Canning Co.*, 30 Cal.2d 335 [182 P.2d 182]; *Holland v. Kelly*, 177 Cal. 43 [169 P. 1000]; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 P. 238].)

But even where findings should have been made, the failure to make them would not necessarily require a reversal. In a proper case, the appellate court can and should simply remand the case with directions to make findings on the challenged issues. (*Meinecke* v. *Frasier*, 69 Cal.App. 688 [232 P. 499].) In the present case appellant has failed to establish that, even if this were a case where court findings were required, which it is not, this error would require an unqualified reversal. In fact, in view of the record, there can be no reasonable doubt that if the case were sent back for findings on the claimed equitable issues, such findings would necessarily be adverse.

The second cause of action was "for damages for fraud

and deceit, and other relief." It incorporated most of the allegations of the first cause of action, including the claim that the property purchased for $100,000 was worth only $50,000, thus resulting in damages of $50,000. In addition, respondents alleged that they were entitled to "have re-transferred and re-conveyed to them, as a set off, the Promissory Note . . . and the Deed of Trust securing the same" given to defendant as partial payment for the motel. This note was payable to respondents by third parties from a prior transaction. Respondents also alleged that they were entitled "to a credit and set off by cancellation of the Promissory Note, Deed of Trust and Chattel Mortgage . . ." which plaintiffs had executed themselves in favor of defendant upon consummation of the transaction in question. As already pointed out, a preliminary injunction was also sought on this cause of action, restraining the transfer of notes, deeds of trust, and chattel mortgage as well as further proceedings pursuant to the notice of breach of obligation and election to sell under the deed of trust which were threatened by defendant. The jury rendered a general verdict assessing plaintiffs' damages in the sum of $32,673.70. Upon motion of plaintiffs, that sum was reduced by the amount of the principal and interest unpaid on the note executed by them to defendant. The trial court also continued the preliminary injunction, in part, as follows: The defendant was restrained from transferring the note, deed of trust, and chattel mortgage executed by plaintiffs and until after judgment became final they were to stay in the custody of the clerk of the court; he was restrained from acting pursuant to his notice of breach and election to sell; the injunction regarding the transfer of the note and deed of trust, payable to plaintiffs by the third parties and assigned to defendant, was dissolved; the $1,000 undertaking was continued.

The problem as to whether a particular cause of action is fundamentally legal or equitable is not always easy of solution. Generally, the controlling factors are the historical basis of the asserted right and the nature of the relief sought. (See 1 Witkin on California Procedure, § 21, p. 510.) Neither the label put on the asserted cause of action, the principles by which relief is sought, nor the prayer controls the determination.

The present case does not present serious difficulties. The basic thing that respondents sought and obtained was damages. The jury undoubtedly awarded the respondents dam-

ages. ██ Respondents could have accepted the damages prayed for in cash or its equivalent. With appellant's apparent approval (R.T. 755-762) respondents agreed to accept the notes as a set off. This partial change in the form of the compensation did not operate to change the essential nature of the cause of action. The ultimate purpose and result of this cause of action was an award of money for fraud.

The case is not fundamentally different from *Hines* v. *Brode*, 168 Cal. 507 [143 P. 729]. That was an action, in part, for alleged deceit in the execution of a contract. The court held that it was proper for the jury to deduct from its award the unpaid part of the purchase price. (See also *Foster* v. *Gorham*, 63 Cal.App. 601 [219 P. 476]; *Hullinger* v. *Big Sespe Oil Co.*, 50 Cal.App. 6 [194 P. 742]; *Pembrook* v. *Houston*, 41 Cal.App. 54 [181 P. 828].) The mere fact that respondents secured recoupment by cancellation of notes instead of by payment in cash did not change the nature of the action. In the instant case, at the request of both appellant and respondents, no instruction to the jury on recoupment was given because the balance owing on the purchase price was definite and certain, but the set off allowed by the court is of the same character as that involved in the Hines case.

The last contention of appellant is that the trial court committed prejudicial error in failing to give several instructions proffered by him on the law applicable to admissions. The refused instructions read as follows:

"I instruct you that the evidence in this case shows listings and advertising on the part of the plaintiffs, the Lenards, to sell the Berkeley Motel in about the middle of the year 1953, and within a period of less than one-half year after they signed their agreement to buy the Berkeley Motel from Edmonds. Such listings and advertising set forth the attempt of plaintiffs, the Lenards, to sell the Berkeley Motel for the sales price of $118,000, whereas, on the contrary, in their complaint they claim that the value of the Berkeley Motel, when sold to them by the defendant Edmonds in the early part of 1953, less than six months earlier, was only $50,000.

"Such listing and advertising is an admission against the interest of plaintiffs, the Lenards, as to the value of said Berkeley Motel and may be considered by you, together with other evidence in the case, as to the actual value of the Berkeley Motel, in determining whether the actual value of the Berkeley Motel on January 23, 1953, was greater or less

than the actual value of that with which plaintiffs, the Lenards, parted.

"I instruct you that statements by the plaintiffs, the Lenards, in offers to sell the Berkeley Motel within a reasonable period of time after January 23, 1953, in which they set forth the daily gross income from the Berkeley Motel as being $88.00, and in which they state their belief in the possibility of increasing the daily gross to $101.00, and in which they set forth the gross income from the Berkeley Motel as being $22,000 annually, are admissions against the interest of plaintiffs, the Lenards, as to the daily receipts and as to said annual gross income, and such statements in such offers to sell by the Lenards may be considered by you, together with other evidence as to income and value, in determining the actual value of the Berkeley Motel."

Appellant sets out at length the evidence in the record that demonstrates that relevant and admissible evidence was introduced on the matters referred to in the refused instructions. This evidence was considered by the jury, and by counsel in their arguments, but appellant urges that he was also entitled to the instructions. The court instructed at length, and correctly, on the credibility of witnesses and gave the following instruction on admissions: "Any evidence that has been received in this case of an act, omission or declaration of a party, which is unfavorable to his own interests, should be considered and weighed by you like any other admitted evidence, but evidence of the oral admission of a party, other than his own testimony in this trial ought to be viewed by you with caution."

Appellant attacks the last quoted instruction as being vague and uncertain, and also claims that it is misleading in referring to "oral" admissions because, so it is asserted, this implies that respondents made no written admissions in the form of advertisements for the sale of the property.

The refused instructions are argumentative. ■ Instructions should state rules of law in general terms. It is not proper to put detailed recitals of fact in instructions that amount to an argument to the jury in the guise of a statement of law. (See discussion and collection of cases in 2 Witkin on California Procedure, p. 1784.) In *Roy* v. *Mission Taxi Co.*, 101 Cal.App.2d 438, 447 [225 P.2d 920], this court stated: "The prevalent practice of seeking to argue a case in instructions should be discouraged and we have no doubt that if the appellant had offered an instruction giving the law

as to imminent peril, as approved by the decisions of our courts, it would have been given by the trial court.''

█ These rules are here applicable. The refused instructions are argumentative, referring as they do to the details of the listings by respondents. The court gave, as requested by appellant, the general instruction on admissions above quoted. This instruction, undoubtedly, could have been elaborated upon. But if appellant wanted a more detailed instruction on the subject matter he should have offered such an instruction. This he did not do, contenting himself with offering the improper and argumentative instructions above quoted. These the court was justified in refusing.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1957.