SHEPARD, J.
In 1951 the Gothard Manufacturing Company, then a corporation owned by Ralph Gothard (now de *40 ceased) and his son, William Gothard, defendant herein, contracted to manufacture and sell certain dynamotors to plaintiff. The number ultimately agreed upon was 1,012. A dynamotor is an electrical instrument which operates at high speed and converts low voltage direct electrical current to high voltage for use in a radio of which the dynamotor becomes a component part. The radios here involved were being manufactured by plaintiff as receiving and sending apparatus for United States Navy airplanes, in accordance with Government specifications therefor. Preliminarily defendants furnished two dynamotors, which were tested by plaintiff and found insufficient. In February, 1952, a third was delivered, which passed the tests given to it. Defendant then furnished 10 more, and after tests were given them, defendants were authorized to continue filling the contract. It was then August, 1952, 11 months after the original contract.
Ralph Gothard and defendant William Gothard, as partners, took over the business of the corporation and succeeded to all its rights and obligations, and became responsible for fulfilling the contract with plaintiff, as of February 29, 1952. The balance of the dynamotors were manufactured and delivered to' plaintiff between November, 1952, and May 6, 1953, and the total purchase price of $65,422.70 was paid.
Plaintiff started to use said dynamotors in its radio telephone sets under its contract with the United States Navy for use by the latter in navy aircraft. After starting to use said dynamotors, the rejections of these telephone sets by government inspectors rose rapidly, from approximately 2 per cent to about 18 per cent, and plaintiff stopped the use of the Gothard dynamotor. Numerous tests by plaintiff and outside electrical engineers and highly trained technicians of samples of these dynamotors selected at random, convinced plaintiff that the dynamotors as a whole were not up to specifications and were unreliable. Copies of the test reports were forwarded to both defendants and the United States Government so that all parties were fully apprised thereof. The tests, as testified to by engineers and expert technician witnesses, during the years 1952, 1953, and 1954, revealed that the dynamotors were deficient in many particulars. A large percentage did not pass the durability or “life” test. Excessive “ripple” and mechanical noise was noted (as nearly as we can understand the highly technical language of the electrical engineer witnesses, ripple is an excessive amount of pulse or vibration in the electrical current resultant from accumula *41 tion of AC current along with and as a part of the voltage increase of DC current created by the dynamotor so that radio transmission contains “hum” or “hash”, making reception unintelligible). There were also revealed unreliable variability in voltage output; insufficient moisture resistance; excessive vibration of mechanical parts; brushes prematurely breaking down; lack of dynamic balance; some instances of zinc plating instead of the specified cadmium plating; cadmium plating thinner than specifications in some instances; some instances of no plating at all on some of the parts, and defective armatures.
Complaints as to the quality of these dynamotors went forward to defendants, correspondence ensued, and in October, 1953, 604 of the dynamotors were returned to and accepted by defendants. The remedial clause of the contract provided that “Articles not in conformity herewith may, at Collins’ option, be returned to Seller for repair, replacement, credit, or refund as Collins may direct or Collins may retain same at a proper adjustment of price.” December 31, 1953, defendants issued to plaintiff its credit memorandum Number 1167, in an amount equal to the purchase price of 560 of these dynamotors, bringing the credit balance in favor of plaintiff to a total equal to the purchase price of all 604 of the dynamotors returned. At about the same time defendants agreed to inspect and retest the 604 dynamotors for the sum of $10 each and to repair or rework those which were found deficient. In May, 1954, defendants sent to plaintiff six reworked dynamotors. Of these four were subjected to the durability or “life” test and three were found deficient. The other three, on, inspection by an independent expert (Brewer) were found improperly plated, unable to pass the salt spray test, lacking in dynamic balance, and with unsatisfactory armatures. There also is a clear inference from the testimony that they could not be rebuilt without the expenditure of a greater sum than their sale price.
Thereafter defendants communicated with plaintiff, requesting the issuance of a work order to continue the reworking of the remainder of the dynamotors. Plaintiff did not reply. In the fall of 1954, defendants sold their business to Sangamo Electric Company. Defendants did not include the dynamotors in question in that sale. Later, plaintiff obtained the services of Sangamo Electric Company to tear down 60 of said dynamotors and send to plaintiff the parts for use as spare parts.
*42 This action was commenced in October, 1956. In the meantime the Gothards had moved to California, Ralph Gothard died and William Gothard became a defendant individually and also as executor of the estate of Ralph Gothard. The complaint contains two counts, one for breach of contract and one resting on breach of warranty, asking for damages in the sum of $28,617.63. This was the amount paid for the remaining dynamotors which remained in Springfield, Illinois, after giving various credits, including credit for the 60 dynamotors torn down for spare parts. Judgment was rendered in favor of plaintiff as prayed, and defendants appeal.
Defendants urge the ground of appeal that the court erroneously found that plaintiff was damaged in the sum of the total purchase price of the dynamotors remaining after the credits as above set out and further, that plaintiff failed to support its burden of proving any damage by reason of breach of warranty..
The numerous tests in which deficiencies were found as related by witnesses Loop, Vick, Brewer, Harrison, Paxton, and others, coupled with the voluntary issuance of a credit certificate by defendants to plaintiff in the total amount of purchase price of the dynamotors returned, amply supports the finding of the trial court that the 604 dynamotors were deficient and not up to contract specifications and warranties.
It is true that the general rule in case of breach of warranty by the seller gives to the buyer an election of remedies. (Civ. Code, § 1789.)
"The general rule applicable to all cases of sales of property is that the buyer has an election of remedies for a breach of a contract of warranty. If he knows of the defect at the time performance is offered he may refuse to accept the goods, insist on due performance, and sue for damages for non-performance if further performance is not duly offered, and if he has paid for the goods in advance he can recover the amount of money paid thereon as part of the damages. If part performance has been made, he may rescind the contract, restore what he has received and recover what he has paid. He need not rescind, or reject the goods, however, but may stand upon the contract, and, relying upon the warranty, may take the goods offered and sue for the damages caused by the breach.” (North Alasita Salmon Co. v. Hobbs, Wall & Co., 159 Cal. 380, 384 [113 P. 870, 120 P. 27, 35 L.R.A. N.S. 501].)
It is also true that at some time before judgment he
*43 must make an election. (Lenard v. Edmonds, 151 Cal.App.2d 764 [312 P.2d 308]; Holt Manufacturing Co. v. Ewing, 109 Cal. 353 [42 P. 435].) But it is also true that where a portion of the goods sold fails to comply with the warranty, the buyer may reject the portion of the goods found defective. (Morrell v. San Tomas Drying & Packing Co., 30 Cal.App. 194 [157 P. 818].)
As above set out, the trial court was entitled to conclude that the plaintiff did return all of the dynamotors remaining on hand, and that such dynamotors did not meet the contract specifications. The fact of the return of these dynamotors coupled with the correspondence between the parties clearly was notice to defendants that they were returned as defective. The issuance of the credit certificate from defendants to plaintiff for these dynamotors was sufficient to support an inference by the trial court that defendants admitted their unreliability, even though it might be said that the trial court could have reached a different conclusion, “When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact.” (Smith v. Bull, 50 Cal.2d 294, 306 [325 P.2d 463].)
 The contract itself provided that plaintiff might elect to return articles not in conformity with the contract and receive credit therefor. Under the facts before us, we think the trial court was entitled to find that plaintiff had proceeded in exact accordance with the provisions of the contract and that the issuance of the credit certificate was intended by defendants and was, in fact, itself a compliance therewith. The trial court was entitled under the facts here presented to conclude that this was an acknowledgment by the defendants of a termination of the original contract and that the agreement to retest and rework was a new and different understanding. We see no impropriety in the use by the trial court of the acknowledgment contained in this credit certificate as a measure of damage since it ivas provided by the contract between the parties themselves and would therefore not be controlled by the general rules on measure of damages. The trial court’s conclusion is, of course, further supported by the testimony of Brewer that the dynamotors tested by him could not be economically reworked for the amount involved in the pur *44 chase price. We think other points raised by the parties are sufficiently covered by the foregoing discussion.
The judgment is affirmed.
Griffin, P. J., and Coughlin, J., concurred.
Petitions for a rehearing were denied April 11, 1960, and the petition of defendants and appellants for a hearing by the Supreme Court was denied May 11, 1960.