[Civ. No. 15810.   First Dist., Div. One.   May 14, 1954.]

ACME PAPER COMPANY (a Corporation), Respondent, v. IRWIN GOFFSTEIN, Appellant.

J. W. Ehrlich for Appellant.

Freed, Gebauer & Freed for Respondent.

McMURRAY, J. pro tem.*—Defendant appeals from a judgment for plaintiff in the amount of $6,954.90 together with exemplary damages of $500.

Appellant was employed as warehouse foreman by respondent in its coarse paper goods jobbing and distributing business. On March 4, 1948, respondent purchased certain merchandise

*Assigned by Chairman of Judicial Council.

from Zel R. Kahn, a salvage merchandise dealer. In the latter part of April appellant told the general manager of respondent company that Kahn had some items to sell. A purchase order was made out and signed by the manager as was a check payable to Kahn. The check was given to appellant to deliver to Kahn. This he did not do, as his representation that the merchandise was purchased from Kahn was false. In fact, the merchandise was delivered by one Ratto, a truck driver. The check was endorsed with Kahn's name, either by appellant or Ratto, and was cashed at a nearby restaurant and the proceeds were divided between appellant and Ratto, appellant receiving 10 to 20 per cent of the total price. This course of conduct was repeated in substantially the same manner on 33 subsequent occasions, continuing until March of 1952. In April, 1952, respondent's manager met Mr. Kahn at a luncheon and commented upon the series of supposed transactions between them. Upon Kahn's statement that he had not had any of the dealings above set forth, respondent first learned that the various purchases had not been made as represented by appellant.

Complaint was filed within two weeks of this discovery, alleging a common count for money had and received. An attachment was levied upon filing this action. Thereafter, the complaint was twice amended, the first cause of action remaining upon the common count and the second cause of action alleging facts substantially as above set forth, and seeking punitive damages by reason of the alleged oppression, fraud and malice of appellant.

Appellant contends that the judgment is erroneous as based on tort; that the evidence is insufficient to support the findings; that it was error to apply the rules of principal and agent here; that it was error to award punitive damages. The first and last points are so closely related that they will be considered as one contention.

Appellant vigorously urges that the issuance and levy of the attachment constituted an election to proceed upon an action based on contract, and that receiving evidence and making findings on tort are fatal errors. He also urges that since formal allegations of conversion are not contained in the second amended complaint no findings are justified thereon, and further, that since the action is one on contract it is barred by the statute of limitations. Respondent objects to appellant's raising the question of election for the first time on this appeal and contends that by failing to raise it sooner

the defense has been waived. Respondent also contends that the same proof and findings often support either a common count or a tort count for conversion and that where, as here, a plaintiff does not discover wrongful conduct because of the fraudulent concealment thereof by the wrongdoer the running of the statute of limitations is tolled until the plaintiff receives notice of the existence of the cause of action.

■ Where a party avails himself of the provisional remedy of attachment, he does thereby elect to proceed in contract rather than tort. In *Steiner* v. *Rowley*, 35 Cal.2d 713, it is said at page 720 [221 P.2d 9]: "Concerning the effect of the writ of attachment obtained by the Steiners, the doctrine of election of remedies is based upon the principle of estoppel. 'Whenever a party entitled to enforce two remedies either institutes an action upon one of such remedies or performs any act in pursuit of such remedy, whereby he has gained an advantage over the other party, . . . he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right.' (*De Laval Pac. Co.* v. *United C. & D. Co.*, 65 Cal.App. 584, 586 [224 P. 766].) . . . An action for tort in which exemplary damages are sought is inconsistent with one for money had and received. (Civ. Code, § 3294.) The Steiners were therefore required to make a timely election of remedies. Pleading the two causes of action in the alternative did not constitute an election because inconsistent counts are permissible (citing cases) and an election cannot be forced by demurrer (citing case). But the Steiners also obtained an attachment. This was a positive act of a plaintiff 'in pursuit of . . . [the contractual remedy] . . . whereby he has gained . . . advantage over the other party. . . .' "

The case of *Klinger* v. *Modesto Fruit Co., Inc.*, 107 Cal.App. 97 [290 P. 127], which is relied upon by respondent to stand for the proposition that appellant cannot for the first time urge an election on appeal, was one wherein the court held that where no demand for election was made before the appeal, the defense would be deemed waived. At page 105 of that opinion it is said: ". . . where an agent or an undisclosed principal defends in an action against them jointly, *and the conduct of the plaintiff does not amount to an election,* and the defendants permit a judgment to be rendered and entered against both of them, without raising the question of an election by demurrer, motion, demand, or otherwise, the right to compel an election is thereby waived and may not be raised

for the first time on appeal." (Italics added.) This language clearly is not in conflict with the Steiner case. Neither is *Wells, Fargo & Co.* v. *Robinson,* 13 Cal. 133, in conflict with the Steiner case. There the plaintiffs sued at law after an administrator had rejected a claim in probate, recovered judgment for the full amount, and thereafter brought a suit in equity to recover securities as beneficiaries of a constructive trust. The court held the action at law did not estop plaintiffs from the action at equity since it did not appear that at the time of the action at law plaintiffs knew the use to which the funds had been put, and, moreover, that the judgment at law amounted to little more than an allowance of the claim by the administrator and approval thereof by the probate judge and that the equitable action was merely ancillary to the judgment at law.

So far as the judgment here makes an award in the tort measure of damages it must be held to be erroneous, but this does not mean that the entire judgment must fall. The same facts will support either an action in tort or in assumpsit (*Philpott* v. *Superior Court,* 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990]), and here, although technical words of conversion are not used, in stating the second cause of action there are assuredly facts alleging a conversion. ■ There are allegations of fraud on the part of appellant in that he obtained certain checks of respondent and exercised dominion over them in a manner not contemplated by respondent. By either signing or having Ratto sign the name "Kahn" thereto and sharing the proceeds with Ratto, rather than delivering the checks to Kahn in accordance with his representation to respondent, appellant clearly converted the checks.

■ The statute of limitations is not a bar to this action, although it sounds in contract. Even where an express contract was the subject of the action, rather than a contract implied in law, the Supreme Court has held that fraud would toll the running of the statute on the cause of action for breach thereof when "The breach was accomplished underhandedly, by secret confederacy with another, and the use of his name to cloak the movements of the defendant . . ." (*Gregory* v. *Spieker,* 110 Cal. 150, 153 [42 P. 576, 52 Am.St. Rep. 70].) When, as here, the contract sued upon relies for its existence upon the rule of law that implies a contract to repay money that should not in good conscience be kept by appellant, the language quoted is strikingly apposite. Appellant used Kahn's name and his own false representations as

to the source of goods purchased to "cloak the movements of the defendant" and concealed the fact that checks given to him for delivery to Kahn were in fact delivered to another and the proceeds divided with defendant. Upon discovery of the fraud this action was promptly filed.

The next point urged by appellant is that the evidence is insufficient to support the findings. In support of this he argues that there is no evidence that his representations induced respondent to act; that all items purchased were fast moving items which respondent would have purchased from anyone and that his use of the name Kahn was no inducement. This argument is somewhat weakened by the fact that appellant used the name "Kahn" in 34 separate instances and also by the fact that Mr. Kahn was a reputable, established salvage dealer. It might well be asked why, if appellant felt the use of the name Kahn was no inducement, he did not disclose the true name of the seller of the items to respondent, when by so doing he would have avoided the inconvenience of endorsing that name on several of the checks and would also have relieved Ratto of the same inconvenience. Had he done this he would not be called upon to now contend that he did not convert the checks to his own use by forgery; his next argument.

Civil Code, section 3090, subdivision (3), provides: "The instrument is payable to bearer . . . (3) When it is payable to the order of a fictitious or nonexisting or living person not intended to have any interest in it and such fact was known to the person making it so payable *or known to his employee or other agent who supplies the name of such payee,* . . . " (Italics added.) Appellant therefore contends that his and Ratto's signing of the name Kahn to the checks was not a forgery in view of this section. The section is found in the title dealing with negotiable instruments and admittedly defines an instrument payable to bearer and defines the risk of loss thereunder. It does not, however, deal with the rights as between the maker and his employee and cannot be construed to give an employee the right to obtain checks and money from his employer by falsely representing that such checks are to be delivered to and cashed by an existing person, whereas that employee knows that he or a confederate will receive, endorse and cash such checks for their own benefit.

Appellant complains that no damage to respondent was shown; that all items, with the possible exception of 12 bales of twine, were received and later sold by respondent. This plaint is based upon appellant's staunch assertion that the

second cause of action is for fraud and deceit and that damages must be proved. The action is one for money had and received, based upon a conversion perpetrated by fraud and deceit. The subject matter of the conversion is the checks received by appellant and applied to his own use or that of Ratto. ■ The measure of damage caused by the conversion of checks is the face value thereof (65 C.J. 151) and the presumption that this is the damage ". . . cannot be repelled, in favor of one whose possession was wrongful from the beginning, by his subsequent application of the property to the benefit of the owner, without his consent." (Civ. Code, § 3337.) Under this view it is unnecessary to determine whether or not the merchandise was received. The respondent did not consent to the purchases from Ratto and has never ratified them after discovery.

■ Appellant next urges as error the fact that the law of principal and agent was applied where appellant was only an employee. In view of what has been said heretofore it becomes unimportant whether appellant was an agent or an employee. Neither of these relationships gives him the right to convert his principal's property.

In view of the foregoing it is apparent that the portion of the judgment awarding exemplary damages must be reversed, as such damages are only consistent with an action on tort. The judgment is modified by striking therefrom that portion which provides that plaintiff recover from defendant $500 for exemplary damages, and, as so modified, is affirmed, each side to bear its own costs on appeal.

Peters, P. J., and Wood (Fred B.), J., concurred.