[Civ. No. 13359. Fourth Dist., Div. Two. Sept. 25, 1974.]

ARCHIE S. ROAM, Plaintiff and Respondent, v.
R. M. KOOP, Defendant and Appellant.

**COUNSEL**

Iverson, Yoakum, Papiano & Hatch, Leonard M. Amato and E. Broox Randall for Defendant and Appellant.

Beam, Duffy & Ure and Byron J. Beam for Plaintiff and Respondent.

**OPINION**

**THE COURT.**—This is a multiple-count action arising out of a series of home repair and remodeling agreements entered into between Archie S. Roam, plaintiff, and R. M. Koop, Countywide Termite Control, and Countywide Construction Company, defendants. The original complaint stated four causes of action based on unlawful misappropriation of funds, fraud, breach of contract and money had and received, and sought both compensatory and punitive damages. By a unanimous jury verdict, Roam was awarded general damages of $22,459, interest of $6,980.17, and punitive damages of $14,718. Koop appeals the judgment following denial of a motion for a new trial.

The sole question presented by Koop on appeal is whether the trial court erred in granting a tort remedy when Roam, after filing his complaint, had levied on certain of defendant's property under a writ of attachment.

**FACTS**

R. M. Koop was the sole owner of Countywide Construction Company and President of Countywide Termite Control, a corporation. Both the enterprises operated from the same address and together, during the years 1967 and 1968, employed about 35 people. The majority of these employees were employed by the termite company. The remaining staff,

about three or four, were employed by the construction company. Its number remained small since most of the construction work obtained by that company was subcontracted.

In 1967, through a canvassing lead, Roam came to the attention of Koop. Seventy-five years old and retired from the Navy, Roam lived alone in Belmont Shores, California. He resided in a two-story duplex which was divided into an upstairs and a downstairs unit. The duplex, owned by him, had been purchased about 30 years earlier. He had continuously resided there since its purchase.

At trial the evidence tended to show that Roam's mental acuity began to deteriorate following the death of his wife in 1965. His eyesight was also failing and in 1965 he was denied renewal of his driver's license. His vision worsened until it reached the point that he was unable to read without the aid of a magnifying glass. Testimony also showed that Roam was easily susceptible to suggestion once his confidence was gained.

Following the initial contact between an employee of the termite company and Roam, numerous meetings took place between Roam and Koop. Between March 30, 1967 and February 17, 1969, Roam and Koop entered into a series of 10 construction contracts. The contracts contemplated the repair and remodeling of the duplex. The contracts, entered into in succession, totaled $27,417. Payment was made on each of the separate contracts as each job was completed. Bank of America stock certificates, according to the testimony of Roam, were used as payment for all except the last of the contracts. No record was kept of the number of stock certificates which were given as payment and Roam could not remember the total.

After receiving the stock, Koop transferred it to his personal account with Goodbody and Company. In October 1968, Goodbody and Company issued four checks representing the total proceeds from the sale of the stock, less commissions, in the amount of $20,700. Three of the four checks were made payable to Roam, endorsed by him and then given to Koop or one of his employees. One of the checks in the sum of $7,264.64 was drawn to the order of Koop. In addition Koop requested and received additional sums from Roam's bank account.

At trial an appraiser testified that the total value of Roam's lot and duplex in 1968 was $28,200. Of that sum $3,200 represented the value of the duplex. Other expert testimony showed that not all of the work which had been contracted had in fact been done. Although one contract specified the installation of a new floor in the dinette, bathroom, kitchen and service porch of the downstairs unit, upon inspection it was found that this work

was never accomplished. Another contract provided for the removal of a bathroom wall in the lower unit, the bathroom ceiling upstairs and the replacement of lathing as necessary. An examination of the premises disclosed that this work was not performed. Various other repairs, though included in the contract price and paid for, were also not performed.

Additional expert testimony revealed that Roam had been overcharged for certain of the work done, in some instances at exorbitant rates. A contractor in the general area testified that he would have performed substantially all the work called for in the 10 contracts for $6,018.88. He concluded that he would receive a fair profit at that price.

The trial court was not guilty of overstatement when, in denying defendant's motion for a nonsuit, it said "It just seems to be such a plain case of taking advantage of a weak-minded lonely old man that it cries out for an injustice [*sic*] . . ." He further observed on the motion for a new trial that the result would have been the same had there not been a jury. Understandably, defendant does not attack the sufficiency of the evidence to support the judgment.

## DISCUSSION

The central issue on this appeal is whether in a multiple count suit sounding in both tort and contract where a writ of attachment has issued and property levied thereunder, the plaintiff is barred by the doctrine of election of remedies from recovering in tort, although the defendant raises the issue of election of remedies for the first time on appeal.

Broadly speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts. ■ Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment. (*Williams* v. *Marshall*, 37 Cal.2d 445, 457 [235 P.2d 372]; *Thorson* v. *Western Development Corp.*, 251 Cal.App.2d 206, 213-214 [59 Cal.Rptr. 299].) However, if a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other. (*Mansfield* v. *Pickwick Stages*, 191 Cal. 129, 130-131 [215 P. 389].) It is to such a situation that the doctrine of election of remedies pertains. The doctrine of election of remedies acts as a bar precluding a plaintiff from seeking an inconsistent remedy as the result of his previous conduct or election. In California the doctrine is theorized on the principle of estoppel. ■ "Whenever a party entitled to enforce two remedies either institutes an action upon one of such reme-

dies or performs any act in the pursuit of such remedy, whereby he has gained any advantage over the other party, or he has occasioned the other party any damage, he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right." (*De Laval Pac. Co.* v. *United C. & D. Co.,* 65 Cal.App. 584, 586 [224 P. 766]; *Steiner* v. *Rowley,* 35 Cal.2d 713, 720 [221 P.2d 9].)

In the instant case the original complaint contained various causes of action based upon divergent legal theories. The causes of action were for fraud, unlawful misappropriation of funds, breach of contract, and money had and received. The cause of action for fraud sought both compensatory and punitive damages. After the complaint was filed a writ of attachment was issued and various bank accounts, a safe deposit box and certain real property belonging to Koop were attached. Subsequently the property was released after Koop posted an attachment bond.

■ Punitive damages are authorized by statute in actions for the breach of an obligation, not arising from a contract, in which the defendant has acted oppressively, fraudulently, or maliciously. (Civ. Code, § 3294.) Punitive damages may not be recovered in actions founded in contract. (*Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn.,* 18 Cal.App.3d 1023, 1038 [96 Cal.Rptr. 338]; *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co.,* 48 Cal.2d 71, 77 [307 P.2d 626].) An action in tort for fraud in which punitive damages are sought is inconsistent with one for money had and received. (*Steiner* v. *Rowley, supra,* 35 Cal.2d 713, 720.) ■ By pleading causes of action founded in tort and in contract Roam was pursuing concurrent and inconsistent remedies. However, the mere pleading of inconsistent causes of action did not constitute a binding election of remedies since inconsistent counts are permissible. (*Steiner* v. *Rowley, supra.*) But Roam obtained a writ of attachment available solely under his contract action. (Code Civ. Proc., § 537; *Stowe* v. *Matson,* 94 Cal.App.2d 678, 683 [211 P.2d 591].) Obtaining an attachment constituted a positive act in pursuit of his contractual remedy. By levying under the writ, Koop was deprived of the use of his property and plaintiff obtained an advantage over him. (*Barrett* v. *Hammer Builders, Inc.,* 195 Cal.App.2d 305, 316 [16 Cal.Rptr. 49].)

Since plaintiff Roam was pursuing two inconsistent remedies and took unequivocal action available under only one of them whereby he gained an advantage over, and whereby an injury—the loss of use of the property—resulted to Koop, presumptively the doctrine of election of remedies is applicable. Two arguments are presented by Roam to overcome the appli-

cation of the doctrine and its effect—the paring away of the punitive damage award allowable solely under a tort theory of relief.

In his first argument Roam cites *Symcox* v. *Zuk,* 221 Cal.App.2d 383 [34 Cal.Rptr. 462]. That case stands for the proposition that if separate and independent causes of action, each based upon different primary rights, have been pleaded, the use of the provisional remedy of attachment as to one does not amount to an election as to the others. If independent causes of action, each based on separate operative facts, are present a plaintiff is entitled to pursue all of them to satisfaction. In the present case ten separate contracts entered into over a period of approximately two years were involved. Although they all concerned the same general subject matter, each may be viewed as involving a separate primary right and thus giving rise to a separate and independent cause of action. However, while Roam may have had 10 independent causes of action based on these contracts, he lost the benefit of their independency when he obtained a writ of attachment since the writ was not limited to only some of the 10 contracts.

The original complaint in this action contained a common count which stated that "[w]ithin two years last past, at Belmont Shore, California, defendant R. M. KOOP, became indebted to plaintiff in the sum of TWENTY THOUSAND DOLLARS ($20,000.00) for money he had and received. . . ." The prayer for damages in the complaint requested an identical sum. The day the complaint was filed a writ of attachment was also obtained. The writ was issued for the recovery of $21,248 less an offset of $1,500 upon a declaration that Koop was indebted to Roam upon a contract.

From the fact that Roam obtained a writ of attachment for a sum virtually identical to the amount alleged as a debt and prayed for as damages in his complaint it may be inferred that the writ was not meant to be based on only some of the 10 contracts. Instead the writ, issued for approximately $20,000, must be viewed as based on the totality of activity between the parties or, in other words, all 10 contracts. For this reason there is no room for application of the rule found in *Symcox* v. *Zuk,* *supra,* 221 Cal.App.2d 383.

Secondly, Roam contends that even if the doctrine of election of remedies was once available Koop has waived that defense by failing to raise it in the court below.

The original complaint in this action was filed on December 31, 1969. On January 2, 1970 and January 6, 1970, pursuant to a writ of attachment certain property belonging to defendant was attached. On February 10, 1970, defendant filed his answer to the complaint. In it he did not demur

to the tort cause of action or raise the doctrine of election of remedies. On July 10, 1972, the first amended complaint was filed. Again defendant failed to demur to the fraud cause of action or raise the election issue. Throughout the trial no mention was ever made of the doctrine of election of remedies. After final argument, instructions were submitted to the jury. The instructions related both to fraud and contract. Moreover, defendant, himself, submitted 13 instructions relating to the fraud count. In moving for a new trial, defendant again failed to raise the election doctrine. Only now on appeal has the issue been raised.

In the instant case Koop could have demurred to the cause of action founded in tort (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 391 [240 P.2d 278]), or raised the doctrine as an affirmative defense. He did neither. In support of his theory that the doctrine can be raised for the first time on appeal, he cites *Acme Paper Co.* v. *Goffstein*, 125 Cal.App.2d 175 [270 P.2d 505]. That case allowed the doctrine of election of remedies to be raised in a case similar to the one presently before us though not advanced until the time for appeal. We do not seek to distinguish *Goffstein* on its facts and doubt that such a result would be accomplished legitimately or without some legerdemain. Rather on perusal of that opinion it is apparent that the result reached will not stand up before critical judicial analysis.

*Acme Paper Co.* v. *Goffstein, supra,* 125 Cal.App.2d 175, involved a suit by an employer, Acme, against an employee, Goffstein, to recover secret profits obtained by him during the course of his employment. After discovery of the situation, a complaint was filed alleging a common count for money had and received. An attachment was levied when the action was filed. Thereafter the complaint was amended to add a cause of action in tort seeking punitive damages. A judgment in favor of Acme in the amount of $6,954.90, plus $500 in punitive damages was rendered. Goffstein appealed.

On appeal Goffstein contended that the issuance and levy of the attachment constituted a binding election to proceed on the cause of action in contract, thereby barring a tort recovery. In opposition, Acme, citing *Klinger* v. *Modesto Fruit Co., Inc.,* 107 Cal.App. 97 [290 P. 127], contended that the defense of election of remedies was waived since it was not raised prior to the appeal.

*Klinger* v. *Modesto Fruit Co., Inc., supra,* involved a suit by a creditor for the recovery of the balance due on a contract for the sale of grapes against two agents and their undisclosed principal. In a suit involving undisclosed principal, the plaintiff may sue either the principal or agent but he cannot hold both. (1 Witkin, Summary of Cal. Law (1973) Agency

and Employment, § 149, p. 751.) While he cannot obtain satisfaction against both, he may join both for the purpose of establishing the existence of the agency and the principal's resultant liability. However once the agency is established, the creditor can be required to designate which party he elects to hold responsible for the obligation. The reason why an election is required is that liability on a contract made by an agent for an undisclosed principal is not joint and several as between them. Rather it results in alternative liability.

In *Klinger* no motion for an election was made during the course of trial. Judgment was entered against both the agents and the undisclosed principal. On appeal the court stated that: "If the demand for an election is not raised by demurrer or motion during the process of the trial by the party for whose benefit this doctrine is intended, it should be deemed to have been waived. While an election under such circumstances as this case presents may reasonably be required on motion, and when exercised should be a bar to a subsequent effort to hold the other party defendant liable, yet in the absence of a demand or motion for such election, there appears to be no good reason why each defendant who would otherwise be obligated, should not be held liable." (107 Cal.App. at p. 104.)

Despite the holding in *Klinger,* the court in *Acme Paper Co.* v. *Goffstein* held that the defense was not waived and could be raised for the first time on appeal. The court distinguished *Klinger* on the ground that no affirmative conduct on the part of the plaintiff amounting to an election had occurred in that case while an attachment had been levied in the case presently before it. The holding was premised on a statement in *Klinger:* " '. . . where an agent or an undisclosed principal defends in an action against them jointly, *and the conduct of the plaintiff does not amount to an election,* and the defendants permit a judgment to be rendered and entered against both of them, without raising the question of an election by demurrer, motion, demand, or otherwise, the right to compel an election is thereby waived and may not be raised for the first time on appeal.' " (*Klinger* v. *Modesto Fruit Co., supra,* 107 Cal.App. 97, 105, cited and italics added in *Acme Paper Co.* v. *Goffstein, supra,* 125 Cal.App.2d 175, 178.)

While the meaning of the last quoted statement may be viewed as permitting the defense of election of remedies to be raised for the first time on appeal if the plaintiff's prior conduct has amounted to such an election, and the court in *Acme Paper Co.* v. *Goffstein* apparently interpreted it in that manner, we question the propriety of such a rule to a situation such as the one before us.

██ The doctrine of election of remedies is but an extension of the general principles of equitable estoppel and is based upon a like theory that inconsistent actions of the party will put his adversary to some disadvantage. (*City Bank of San Diego* v. *Ramage,* 266 Cal.App.2d 570, 588 [72 Cal.Rptr. 273]; *Mansfield* v. *Pickwick Stages, supra,* 191 Cal. 129, 131; *Crittenden* v. *St. Hill,* 34 Cal.App. 107, 110 [166 P. 1016].) Being a form of estoppel the doctrine of election of remedies is an affirmative defense which ordinarily must be pleaded specially unless it appears on the face of the complaint. (*City Bank of San Diego* v. *Ramage, supra,* at p. 588; *Modoc Mineral & Oil Co.* v. *Cal-Vada Drilling etc. Co.,* 236 Cal.App.2d 868 875 [46 Cal.Rptr. 508]; *Karapetian* v. *Carolan,* 83 Cal.App.2d 344, 346-347 [188 P.2d 809, 1 A.L.R.2d 1075]; 3 Witkin, Cal. Procedure (2d ed.) § 944, p. 2524; see 99 A.L.R.2d 1315 et seq.)

██ As a general rule, a party who has an opportunity to plead an estoppel on which his cause of action or defense is premised must do so and a failure to so plead constitutes a waiver of the estoppel. (*Fair Oaks Bank* v. *Johnson,* 198 Cal. 196, 201 [244 P. 335]; *Sloan* v. *Hiatt,* 245 Cal.App.2d 926, 933-934 [54 Cal.Rptr. 351]; 3 Witkin, Cal. Procedure (2d ed.) § 944, p. 2524; 18 Cal.Jur.2d Rev., Estoppel, § 15, pp. 425-426.) ██ Since the doctrine of election of remedies, like the defense of estoppel, is intended for the benefit of the party sought to be bound it may be waived by him. (*Brandolino* v. *Lindsay,* 269 Cal.App.2d 319, 326 [75 Cal.Rptr. 56]; *City Bank of San Diego* v. *Ramage, supra,* 266 Cal.App.2d 570, 588; *Hansen* v. *California Bank,* 17 Cal.App.2d 80, 102 [61 P.2d 794]; *Klinger* v. *Modesto Fruit Co., Inc., supra,* 107 Cal.App. 97, 103.)

██ And ordinarily an appellate court will not consider procedural defects in connection with relief sought where an objection could have been made but was not raised in the lower court. (6 Witkin, Cal. Procedure (2d ed.) § 276, p. 4264.)

██ If the doctrine of election of remedies is founded on equitable estoppel (*Steiner* v. *Rowley, supra,* 35 Cal.2d 713, 720; 2 Witkin, Cal. Procedure (2d ed.) § 113, p. 982), no valid reason appears why it should not be governed by the procedural rules applicable to that doctrine. We see no reason to elevate the defense of election of remedies to a higher plateau than the doctrine upon which it is founded. Since failure to plead equitable estoppel, like other types of estoppel, constitutes a waiver of that defense (*Sloan* v. *Hiatt, supra,* 245 Cal.App.2d 926, 933-934), and since Koop had adequate opportunity to raise the election defense and, in fact,

aided the verdict by submitting instructions on fraud, we see no good reason why we should recognize this issue for the first time on appeal.

Judgment affirmed.

A petition for a rehearing was denied October 21, 1974.