Filed 2/28/24  Starflinger v. KBC Capital CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


PETER STARFLINGER,

      Plaintiff and Appellant,

      v.

KBC Capital, LLC,

      Defendant and Respondent.

D081172


(Super. Ct. No. 37-2017-00023394-CU-CO-CTL)


APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed and remanded.

Klinedinst, Greg A. Garbacz, Benjamin C. Wohlfeil and Robert M. Shaughnessy for Plaintiff and Appellant.

Finch, Thornton & Baird, Louis J. Blum, David S. Demian and O. Thomas Barajas for Defendant and Respondent.

Peter Starflinger appeals from a judgment in the lawsuit he filed against KBC Capital, LLC (KBC) alleging that KBC breached a contract to sell a commercial office building to him.  Starflinger's operative complaint sought both damages and specific performance.  However, after a jury delivered a verdict in favor of Starflinger and awarded damages for KBC's

breach of contract, the trial court denied Starflinger's request for an equitable bench trial on the issue of specific performance, explaining that Starflinger had "elected his remedy" of damages and that it would "amount to an unnecessary expenditure of part[y], counsel, and court resources" to consider the issue of specific performance. Starflinger contends that the trial court erred in entering judgment without considering his request for specific performance, and he asks us to reverse the judgment and remand to the trial court to conduct a bench trial on the issue of specific performance.

We conclude that the trial court erred in failing to decide Starflinger's request for specific performance. Accordingly, we reverse the judgment, and we remand for further proceedings consistent with this opinion.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Real Estate Transaction*

KBC owns a two-story commercial office building in San Diego (the Property). Starflinger and KBC entered into a real estate purchase and sale agreement (the Purchase Agreement), in which KBC agreed to sell the Property to Starflinger.[1] Subsequently, an option agreement (the Option Agreement) gave Starflinger until June 1, 2017, to decide to complete the transaction according to the terms of the Purchase Agreement. Starflinger paid $300,000 in consideration for the Option Agreement, and those funds were released from escrow to KBC. Consistent with the June 1, 2017 deadline in the Option Agreement, an amendment to the escrow instructions

---

[1]    More specifically, the Purchase Agreement was first entered into between KBC and Southwest Group in June 2016, but on October 3, 2016, Southwest Group assigned all its rights under the Purchase Agreement to Starflinger.

stated that if Starflinger did not close escrow by June 1, 2017, the escrow would be cancelled. Among other things, the Purchase Agreement required, as a condition of closing, that KBC provide certain documentation to Starflinger.

Due to what Starflinger characterized as a delay by KBC in providing documentation needed to obtain financing, Starflinger requested in April and May 2017 that KBC agree to an extension of the applicable deadlines. KBC did not agree to an extension. Instead, on May 31, 2017, KBC notified Starflinger that unless escrow closed within five business days of June 1, 2017, it would be deemed terminated. Escrow did not close by that date, and the real estate transaction was not completed.

One other piece of background information is relevant to understanding the context in which this litigation arose. During the period covered by the Option Agreement, an entity that Starflinger intended as a future tenant at the Property was in the process of attempting to obtain a conditional use permit from the City of San Diego to allow operation of a retail cannabis business at the Property. The conditional use permit was initially approved by a hearing officer on May 24, 2017. However, on July 20, 2017 (after KBC's cancellation of escrow for the Purchase Agreement and the initiation of this litigation), the city's planning commission reversed that decision and denied the conditional use permit. Starflinger contends that KBC's actions that gave rise to this litigation were motivated by a desire to back out of the Purchase Agreement so it could try to sell the Property at a higher price to a different buyer in light of the increased value of the Property associated with a cannabis-related conditional use permit.

B.    *Starflinger's Lawsuit*

On June 27, 2017, Starflinger filed a complaint against KBC.[2] Starflinger also filed a lis pendens on the Property.  Against KBC, the operative second amended complaint (SAC) alleged breach of contract, breach of the implied covenant of good faith and fair dealing, specific performance, and declaratory relief.[3]  According to the SAC, "KBC either intentionally delayed, or failed to provide, necessary documentation in its exclusive possession which affected [Starflinger's] ability to procure financing and close escrow."  The SAC alleged both that (1) Starflinger was "damaged in amount of no less than $300,000, which is the amount [Starflinger] put into escrow that was released to KBC"; and (2) Starflinger "has an inadequate remedy at law in that the Property is unique and the Purchase Agreement and Option Agreement allow for Starflinger to purchase the Property."  Accordingly, the SAC's prayer for relief included the following:  "1. General and special damages against Defendants in an amount of at least $300,000 which will be shown according to proof at trial; [¶] 2. For a declaration that KBC is

---

[2]    Starflinger also sued one of KBC's principals, William Luke Gaskins. The jury found against Starflinger on his sole cause of action against Gaskins for intentional inference with contractual relations based on the affirmative defense of the "manager's privilege."  (See *Huynh v. Vu* (2003) 111 Cal.App.4th 1183, 1194.)  Starflinger has not raised any argument challenging the judgment entered with respect to Gaskins, and we accordingly understand Starflinger's appeal as directed solely to the judgment in favor of KBC.

[3]    Although specific performance is a remedy for breach of contract rather than a separate cause of action, the SAC followed the approach of identifying specific performance and breach of contract as two different causes of action.

4

obligated to sell [Starflinger] the Property; [¶] 3. For specific performance requiring KBC to sell the Property to [Starflinger]."

On January 15, 2022, three days before trial began, counsel for Starflinger sent an email to counsel for KBC raising logistical questions about the trial of the equitable claim for specific performance:[4]

> "As we discussed after the status conference on Friday, we are considering seeking bifurcation of the equitable claim for specific performance and having that tried to the court first. A[s] you know, generally, equitable claims get tried before legal claims. Also, from an efficiency perspective, this may also avoid or narrow the jury time.
>
> "The question is whether to bifurcate that equitable claim, try it first, and then if that resolves the issues, we may not need a jury trial for the remaining issues. We plan to discuss this with the court on Tuesday during the pretrial hearings, and obviously the court has the discretion to control the order of proof without our input, but nevertheless, having a common plan or agreement might be helpful.
>
> "I know you raised the issue of perhaps KBC being more inclined to do this IF Mr. Starflinger were to waive the jury entirely so that, any remaining breach of contract claims, if specific performance is denied, are tried to the judge. We are discussing this issue with Mr. Starflinger over the weekend and will be prepared to discuss that with the court on Tuesday, IF that is something your client would consider, which you were not certain of.

---

[4]     "A suit to recover damages for breach of contract is an 'action at law in which a right to jury trial ordinarily exists.' . . . Because specific performance is an equitable remedy, there is no constitutional right to jury trial on that remedy." (*Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 409, citations omitted (*Darbun*).)

"We are looking for ways to truncate the trial and avoid the delays and exigencies associated with [COVID] and a 17 day jury trial, which could lead to mistrial, etc. This would seem to be in your client's interests as well, as I doubt he wants to try the case twice or pay for two trials if that can be avoided."[5]

Counsel for KBC responded later the same day: "I discussed this with [my client] yesterday. We do not think bifurcation is appropriate nor is there a way to bifurcate. We are not agreeable to a bench trial."

Three days later, during the January 18, 2022 hearing on motions in limine, counsel for Starflinger reminded the trial court that Starflinger was seeking a ruling from the trial court on the equitable remedy of specific performance. Specifically, in the course of ruling on one of the motions in limine, the trial court commented that "we're going to need to have a fairly sophisticated jury" and cautioned counsel that, even though the parties had the right to a jury, it was easy for a jury to get confused in "transactional" cases. Counsel for Starflinger replied, "We've had some discussion about this issue. There is one cause of action, to be clear, which is for the Court, and that's the specific performance, which is the equitable cause of action. We had some discussion about maybe trying to bifurcate that, but we haven't come to a conclusion about how to do that efficiently." No further discussion on the subject is reflected on the record during motions in limine or prior to trial. The trial court began jury selection the next day, January 19, 2022.[6]

---

[5] The January 14, 2022 status conference that counsel referred to in his email was not reported. We accordingly have no record of what, if anything, the parties discussed with the trial court regarding the manner in which the claims for specific performance and for damages would be tried.

[6] The record does not reflect any express decision by the trial court about the order of trial for Starflinger's legal claims and equitable claims, but

The jury returned a verdict on March 1, 2022. In its special verdict, the jury found in favor of Starflinger on his breach of contract cause of action and awarded damages in the amount of $300,000.[7] The jury found (1) Starflinger and KBC entered into a contract; (2) Starflinger did all, or substantially all, of the significant things that the contract required him to do; (3) all the

"when severable legal and equitable causes of action or issues are present in a single proceeding, the trial court generally has authority to determine in what order the matters should be heard." (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 317.) "[A]lthough a trial court retains discretion regarding the order in which the issues should be tried, the governing California cases express a preference that the equitable issues be tried first." (*Ibid.*) Nevertheless, "it is fully within a trial court's discretion to have a jury try the legal issues first." (*Darbun, supra*, 239 Cal.App.4th at p. 409, fn. 4.) Regardless of which type of issue is tried first, "the first fact finder may bind the second when determining factual issues common to the equitable and legal issues." (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 156.) Where, as here, "the trial court holds a jury trial first on any legal issues, the court is bound by the jury's factual findings when it considers any equitable issues." (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 355, fn. 52.)

[7] The jury's damage award of $300,000 appears to be based on the $300,000 that was released from escrow to KBC. The jury rejected Starflinger's argument that it should award damages in a higher amount. Starflinger's argument for a higher damages award was based, in large part, on the contention that if escrow was not cancelled, his future tenant, who was seeking the conditional use permit to operate a cannabis business at the Property, would have had standing to file a successful court proceeding to challenge the planning commission's decision to deny the conditional use permit. Starflinger argued that the Property would have had a greatly increased value with the conditional use permit in place (an increase ranging from $500,000 to $3.2 million), which the jury should factor into its damages award. Starflinger further argued that the jury should award (1) $980,000 for 56 months of lost rent on the Property, and (2) $140,000 in prejudgment interest.

conditions required for KBC's performance did not occur, but that the required conditions were waived; (4) KBC failed to do something that the contract required KBC to do, KBC did something that the contract prohibited KBC from doing, or KBC breached the implied promise of good faith and fair dealing; and (5) Starflinger was harmed by KBC's breach of the contract.

Immediately after the verdict was read and the jury was excused, counsel for Starflinger raised the issue of the remaining claim for specific performance. "So I just want to remind the Court we have a remaining cause of action for specific performance, which is completely equitable. It's—obviously, it's 4:38 so we're not getting to that today. I think it's something that can be briefed on the papers." Counsel for Starflinger therefore suggested that the court set a future status conference on the issue. Counsel for KBC asked to be heard on the matter and stated, "So it's [KBC's] position they need to make an election of remedies now. I just want to go on record our belief is—it's defense's position that plaintiffs need to make the election now whether they're going to pursue specific performance or stick with the legal remedy or make that on the record if they choose not to. I suppose I'm taking the position that it's at their risk." Counsel for Starflinger disagreed: "My understanding of the case law is we need to make that election prior to judgment, and so I think we're not at judgment yet. We're also at 4:40. So I could turn and say, 'Let's start a bench trial,' but I don't think that would have much use at this point in time." The trial court resolved the issue by setting a status conference for a later date.

In preparation for that status conference, Starflinger submitted a brief setting forth his proposed procedure for deciding the specific performance claim: "[Starflinger] requests that Court, sitting in equity, hold a bench trial to resolve the remedy of specific performance. [Starflinger] believes that the

8

current record provides more than adequate support for this remedy but suggests that the court hear briefing on the papers and then schedule a day of additional trial testimony to the extent that either party believes that additional evidence must be offered in support of this equitable remedy. [Starflinger] anticipates that the presentation of evidence will take one full day."

At the status conference, KBC took the position, for the first time, that Starflinger was barred from seeking a ruling on specific performance from the trial court because he had *already* elected his remedy of damages "by proceeding with the legal matters to and through the jury verdict," and there were "also some equitable rules that would bar an election of remedies at this time." Accordingly, KBC proposed that the parties proceed by first "just brief[ing] the issue of elections of remedy." KBC explained that if, after that briefing, the trial court determined that specific performance was still a live issue in the case, "I think we need a couple of days of evidentiary hearing, maybe two to three days, maybe a little less, and then closing briefing on that. [¶] But I do think there are a couple of issues that were not fleshed out before the jury that need to be explored a little further upon the equitable remedy."

Although Starflinger disagreed with KBC's proposed approach, the trial court stated, "I kind of like the idea of starting with the election of remedies, but just do it by way of briefing. And then maybe . . . after I've had a chance to review the briefs, then maybe I'll schedule an argument for a little bit so you guys can argue the briefs. [¶] And then depending on the ruling on that, then we deal with the specific performance, however we're going to handle it." In response, KBC commented that, in the event the trial court decided to consider the merits of the specific performance claim, "we're going to need at

least a two to three day evidentiary hearing. Things may change, but the way I look at the evidence that did come in and the evidence that didn't come in, there needs to be a couple more days of testimony."[8]

The trial court concluded, "Okay. Well, let's do this. Let's at least start with the election of remedies briefing." The trial court explained, "I may or may not rule right then on the election of remedies. I may take a day or two to think about it after the argument. Just depends. [¶] But once I rule on it, then we would have to schedule—I mean, we'd talk about it at that time . . . , what we're going to do as far as are we going to just brief it or are we going to need, actually, an evidentiary hearing. And then we can schedule something." Near the conclusion of the hearing, counsel for Starflinger asked for clarification: "So the briefs due on April 18th are only regarding the issue of the election of remedies and whether we can elect specific performance . . . ." The trial court responded, "Exactly."

The parties then submitted briefing as the trial court had directed. In its opening brief, KBC presented three separate grounds for its contention that the trial court should not proceed to rule on the merits of Starflinger's claim for specific performance. First, KBC argued that Starflinger "elect[ed] his legal remedy of contract damages by presenting that case to a jury, seeking a verdict from that jury, and receiving a verdict from that jury[.]" Second, KBC contended that Starflinger had "repeatedly perjure[d] himself" during trial by testifying that he exercised the option pursuant to the terms

---

8    At the eventual hearing on whether the specific performance claim should go forward, KBC increased its estimate to seven days of additional proceedings, stating "I think we're easily in here for seven court days on the next go-round." At that same hearing, Starflinger stated that one or two days of additional proceedings would be required.

of the Option Agreement, and that the trial court should "deny an equitable remedy to a claimant who repeatedly perjure[d] himself on a key issue to determination of the action[.]"[9]  Third, KBC contended that because Starflinger "took seven weeks of the jury's time to pursue a $3.9 million award while intending his specific performance remedy as a back-up if that tactic did not pan out," the trial court should "exercise its equitable discretion to deny an equitable remedy to Starflinger so as not to condone, encourage, and reward gamesmanship that result[ed] in an extreme waste of court and jury resources[.]"  KBC argued that "[a]ny of these issues constitute independent grounds to refuse a hearing in equity."

Starflinger's opening brief did not comply with the trial court's directive to discuss the election of remedies issue,[10] but Starflinger's reply brief thoroughly focused on that issue.[11]  Specifically, Starflinger's reply brief responded to each of the three grounds upon which KBC contended that the

---

[9]    KBC specified at the hearing on the election of remedies issue that this "unclean hands" argument was different from any unclean hands argument that it would raise as an affirmative defense if the trial court concluded that it should entertain the merits of the specific performance claim.

[10]    Starflinger's opening brief focused on the merits of his claim for specific performance.

[11]    In its reply briefing, KBC noted that Starflinger's opening briefing had improperly discussed the *merits* of the specific performance claim rather than the election of remedies issue that the trial court had directed the parties to brief.  KBC stressed that "[t]he Court asked the parties to provide briefing on whether Starflinger may pursue the equitable remedy of specific performance despite having already pursued the legal remedy of damages to jury verdict," and argued that Starflinger's briefing on the merits of the specific performance claim "should be disregarded in its entirety as it is completely off-topic."

11

trial court should not consider Starflinger's claim for specific performance. Among other things, Starflinger argued that (1) an election of remedies is not required until entry of judgment unless the defendant has suffered prejudice; (2) there was no merit to KBC's assertion that he had unclean hands because, among other things, the jury did *not* find that he testified untruthfully about exercising the option[12]; and (3) he had not engaged in gamesmanship by proceeding on his damages claim before the jury. Both in disputing that he engaged in gamesmanship and in arguing that KBC suffered no prejudice from having the question of damages decided first, Starflinger pointed out that, prior to trial, KBC *rejected* his proposal that the parties agree to bifurcate the trial of the equitable and legal issues and that the equitable issues be tried to the court *before* the jury trial. Starflinger made clear in the declaration accompanying his briefing that he was still seeking the remedy of specific performance and that he intended to purchase the Property.[13]

---

[12] Starflinger argued that the jury's finding that he did "all, or substantially all, of the significant things that the contract required him to do" should be understood as a finding that he *did* exercise his option to purchase the Property, as he testified. KBC, in contrast, supported its contention that Starflinger had testified untruthfully about exercising the option based on the jury's finding that "all the conditions that were required for KBC's performance" did *not* occur.

[13] Starflinger stated, "I request a Court order granting me the remedy of specific performance—i.e., that KBC be ordered by the Court to convey the Property to [Starflinger] pursuant to the terms of the parties' contract for the sale of the Property and account for its use of the Property since the date of breach of June 1, 2017. I continue to demand that KBC convey the Property to me immediately. [¶] . . . Assuming the Court gives such an order, assuming KBC complies with it by timely and fully turning over all the documents, and assuming the documents indicate that the Property has at least as much value as I believed when I signed the [Purchase Agreement], I

The trial court held two hearings on the election of remedies issue. At the beginning of the first hearing, at which it primarily addressed scheduling, the trial court summarized the issue before it: "We are discussing kind of the second phase of the trial, which is the issue of whether specific performance is still a viable cause of action, *whether it should or should not go forward*." (Italics added.)

The trial court issued a ruling on June 21, 2022, which endorsed two of the three arguments advanced by KBC for why the specific performance claim should not go forward. Although the trial court expressly declined to decide, in relation to KBC's assertion of unclean hands, "whether [Starflinger's] testimony amounted to perjury,"[14] the trial court concluded that Starflinger was not entitled to claim the remedy of specific performance for two reasons. First, the trial court concluded that Starflinger had already elected the remedy of damages. Second, the trial court determined that Starflinger should not be granted relief from that election because he had engaged in gamesmanship by first proceeding with a jury trial in which he sought a significant award of damages. Specifically, after summarizing

---

will be ready and willing to further perform my additional obligations under the contract, including paying the balance of the purchase price of $3,225,000 (which is $2,925,000). After I receive full and complete documents from KBC, I will need approximately 60 days to close on the purchase of the Property." (Italics omitted.)

14      Although not reaching the issue of whether Starflinger's testimony amounted to perjury and therefore supported a finding of unclean hands, immediately after declining to reach that issue the trial court commented, "[t]he Court does find that [Starflinger's] testimony lacked candor and credibility."

13

KBC's arguments and the case law upon which KBC relied, the trial court explained those two rulings in the following comments:

> "The Court . . . agree[s] with [KBC's] proposition and above cited cases that [Starflinger] took a risk in choosing remedies, and a further bench trial would constitute a waste of judicial resources by [Starflinger] engaging in undue and prejudicial legal maneuvering.
>
> "The above-cited cases support the Court's belief that [Starflinger] elected his remedy and to give [Starflinger] a second 'bite of the apple' would violate due process, be prejudicial to [KBC], and amount to an unnecessary expenditure of part[y], counsel, and court resources. Finally, the Court was never of the impression following the Jury trial that Starflinger really wanted to purchase the property but instead pursued vast damages for what he perceived as an egregious breach of contract.
>
> "The Jury's verdict did not validate [Starflinger's] contentions and was in the end a minor damages award.
>
> "The request for an equitable bench trial on the issue of specific performance is denied." (Emphasis and capitalization omitted.)

The trial court entered judgment on August 16, 2022. The judgment recited the jury's verdict and explained that "[s]ubsequent to the jury verdict, the Court received briefing from [KBC] and [Starflinger] regarding [Starflinger's] request for a further bench trial on equitable relief. . . . On June 21, 2022, the Court issued its order denying equitable relief." The judgment awarded $300,000 in damages to Starflinger, but it specified that Starflinger had not prevailed on his "causes of action for specific performance and declaratory relief."

14

Starflinger appeals from the judgment, challenging the ruling on the claim for specific performance.[15]

## II.

## DISCUSSION

A.   *The Parties' Contentions on Appeal*

The resolution of this appeal turns to a large extent on how to understand the trial court's June 21, 2022 ruling on the specific performance claim.  As we will explain, Starflinger contends that the trial court erroneously declined to proceed with the merits of the specific performance claim and that its ruling was based on its application of the election of remedies doctrine.  KBC, in contrast, contends that the trial court reached the merits of the specific performance claim, and we should therefore apply a deferential standard of review in affirming that ruling.  We begin by examining the parties' very different views of the trial court's June 21, 2022 ruling.

1.   *Starflinger's Characterization of the June 21, 2022 Ruling*

As Starflinger summarizes his contention in this appeal, "the trial court erroneously . . . concluded that because the parties tried the legal issues first, Starflinger had made an election of remedies that prevented him from pursuing his remaining equitable claims."  Starflinger argues that "[t]he trial court had a duty to resolve the remaining equitable claims following the conclusion of the bench trial. . . .  It failed to do so when it followed inapt case law and wrongly decided there was an election of remedies despite the lack of a judgment, and the lack of any adverse impact upon KBC."  Starflinger asks

_____

[15]   KBC filed a cross-appeal, which it subsequently dismissed.

15

that we "set aside the judgment and return this matter for a bench trial on specific performance."

### 2. *KBC's Characterization of the June 21, 2022 Ruling*

KBC, on the other hand, contends that the trial court's ruling did not depend on the election of remedies doctrine. KBC states that the trial court entered "judgment *on the merits . . .* denying Starflinger specific performance." (Italics added.) This merits-based ruling was purportedly based on the trial court's conclusion that "Starflinger was not credible, never really wanted the property (i.e. could not meet the ready and willing element) and was wasting court resources (i.e. unclean hands)." According to KBC, instead of declining to reach the merits of the specific performance claim, the trial court merely decided that it would not hear *additional evidence* because "[a]fter a lengthy jury trial, the record contained all the information necessary to decide the elements of entitlement to specific performance." KBC contends that "the decision to deny a hearing" did not "turn on the election of remedies, but rather the futility of a further hearing where the trial court had the evidence required for its ruling."

KBC argues that because the trial court issued a ruling on the merits of the specific performance claim, but without issuing a formal statement of decision, the trial court's ruling is "subject to the doctrine of implied findings" and must be evaluated under a substantial evidence standard of review. (See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 983 [explaining doctrine of implied findings].) KBC asks that we affirm the trial court's purportedly merits-based ruling by *implying a finding*, based on substantial evidence in the record, either that (1) "Starflinger was not ready and willing at all times to buy the [P]roperty" and thus failed to satisfy all the elements needed for specific performance (italics omitted); or (2) "Starflinger acted with unclean

16

hands by:  ([a]) submitting a false affidavit and perpetuating that testimony at trial; and/or ([b]) by gamesmanship in testing his preferred remedy of damages with specific performance as a fallback position."

KBC does not attempt to argue that *if*, as Starflinger contends, the trial court based its June 21, 2022 ruling on the election of remedies doctrine and therefore did *not* reach the merits of the specific performance claim, the trial court's ruling was legally justified.[16]  Similarly, KBC acknowledges that the doctrine of unclean hands would not justify a ruling dismissing the specific performance claim *prior* to considering the merits.  Citing to *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 57, KBC acknowledges that "[a] court that concludes a litigant has acted with unclean hands should not simply dismiss the action, 'but should adjudicate the merits' of the defense *with* the equitable cause of action."  (Italics added.)

B.    *The Trial Court Did Not Reach the Merits of the Specific Performance Claim but Instead Relied on the Election of Remedies Argument Advanced by KBC*

Based on our review of the trial court proceedings, Starflinger has correctly characterized the trial court's June 21, 2022 ruling.  The trial court did not rule on the merits of Starflinger's claim for specific performance because it concluded that Starflinger was bound by his election of a damages remedy.

---

16    KBC's respondent's brief touches on the election of remedies issue in a footnote.  In that footnote, KBC states that "even though this appeal does not turn on election of remedies, it is worth noting that no authorities actually support the proposition that an election of remedies may be made at any time prior to entry judgment where the remedies are mutually exclusive."  (Italics omitted.)

17

As we have explained, KBC advocated that the trial court decline to decide the specific performance because "Starflinger made a clear, unequivocal election of remedies by not asking the Court to hear his specific performance claim first." Accepting KBC's argument, the trial court ruled that (1) Starflinger "elected his remedy"; and (2) it would not give Starflinger relief from that election, which it characterized as giving Starflinger "a second 'bite of the apple,' " because doing so "would violate due process, be prejudicial to [KBC], and amount to an unnecessary expenditure of part[y], counsel, and court resources." On that basis, it "denied" Starflinger "an equitable bench trial on the issue of specific performance." (Emphasis and capitalization omitted.) The trial court plainly did *not* reach merits of the specific performance claim.

KBC takes one part of the trial court's ruling out of context to suggest that the trial court *did* decide the merits of the specific performance claim. Specifically, KBC points to the trial court's statement that it "was never of the impression following the Jury trial that Starflinger really wanted to purchase the property but instead pursued vast damages for what he perceived as an egregious breach of contract." KBC views this statement as pertaining to the requirement that "to obtain specific performance, a buyer must prove not only that he was ready, willing and able to perform at the time the contract was entered into but that he continued ready, willing and able to perform at the time suit was filed and during the prosecution of the specific performance action." (*C. Robert Nattress & Associates v. Cidco* (1986) 184 Cal.App.3d 55, 64.) However, when the context of the statement is considered, we have no doubt that the trial court was *not* commenting on the merits of the specific performance claim; rather, it was explaining that

18

Starflinger had, in fact, elected damages as remedy since he did not "really want[ ]" the Property.

In sum, the record does not support KBC's contention that the trial court ruled on the merits of Starflinger's specific performance claim. Instead, the trial court decided that Starflinger would not be permitted to go forward with his specific performance claim because he had already elected the remedy of damages.

C.    *The Trial Court Erred in Ruling That Starflinger Was Barred from Obtaining a Decision on His Specific Performance Claim Because He Already Elected the Remedy of Damages*

We next consider whether, as Starflinger contends, the trial court erred in ruling that he was foreclosed from proceeding with his specific performance claim because he had already elected the remedy of damages.

There is no dispute that "a party may not obtain both specific performance and damages for the same breach of contract, either in single or multiple actions." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 905.) Thus, although the SAC sought both an award of damages and an order of specific performance, at some point Starflinger would be required to elect between those two inconsistent remedies.

"Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial *prior to judgment*." (*Roam v. Koop* (1974) 41 Cal.App.3d 1035, 1039 (*Roam*), italics added.) "Indeed, one line of authority declares that an election should not be compelled prior to *satisfaction of judgment,* unless the plaintiff has gained some other benefit that would make it inequitable to permit continued pursuit of an otherwise available remedy." (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1221 (*Denevi*).) Case law specifically allows a plaintiff to take to trial both the remedy of specific performance and the remedy of

19

damages, before making an election between them.  (*Brandolino v. Lindsay* (1969) 269 Cal.App.2d 319, 324–325 [in an action for specific performance or, in the alternative, for damages for the breach of an agreement to sell land, the plaintiff obtained a bench trial on specific performance, followed by a trial for damages, before electing a remedy].)

The doctrine of the election of remedies, which KBC relied upon in the trial court, refers to a situation in which a plaintiff is deemed to have irreversibly elected a remedy.  "If a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other. . . .  The doctrine of election of remedies acts as a bar precluding a plaintiff from seeking an inconsistent remedy as the result of his previous conduct or election.  In California the doctrine is theorized on the principle of estoppel. . . .  'Whenever a party entitled to enforce two remedies either institutes an action upon one of such remedies or performs any act in the pursuit of such remedy, whereby he has gained any advantage over the other party, or he has occasioned the other party any damage, he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right.' " (*Roam, supra*, 41 Cal.App.3d at pp. 1039–1040, citation omitted.)  Because " '[t]he doctrine of election of remedies is but a specific application of the equitable doctrine of estoppel, . . . it has been frequently held that a change in remedies does not bring about an election of remedies unless the change involves a prejudice to the opposing party.' " (*California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1065–1066 (*California Golf*); see also *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 137  (*Glendale Fed.*) ["the doctrine of election of

20

remedies . . . operates only where pursuit of alternative and inconsistent remedies substantially prejudices the defendant"].)[17]

Here, the election of remedies doctrine would bar Starflinger's specific performance claim only if the record shows that Starflinger "unequivocally and knowledgeably elected to proceed on one of the remedies he [was] pursuing," and thereby caused substantial prejudice to KBC. (*Roam, supra*, 41 Cal.App.3d at p. 1039.) But the record does *not* reflect any unequivocal and knowledgeable election by Starflinger. As we have explained, an election was not required prior to judgment. (*Ibid.*; *Denevi, supra*, 121 Cal.App.4th at p. 1221.) Further, Starflinger consistently asserted throughout the litigation that he remained intent on pursuing his claim for specific performance. Shortly before trial Starflinger proposed to KBC that the specific performance claim be decided *first*, in a bifurcated proceeding—a proposal that KBC rejected. Next, during motions in limine Starflinger expressly reminded the trial court that "[t]here is one cause of action, to be clear, which is for the Court, and that's the specific performance, which is the equitable cause of action." Finally, immediately upon the conclusion of the jury trial, Starflinger reiterated that the court still had to make a ruling on the claim for specific performance. Starflinger took no action that could reasonably be described as "unequivocally and knowledgeably" electing to proceed solely on

<hr>

[17] Case law observes that "[t]he doctrine of election of remedies has been much criticized and is falling into disrepute. A person should be entitled to change his alternative remedies until one of his inconsistent rights is vindicated by satisfaction of judgment or by application of the doctrines of res judicata or estoppel." (*Frazier v. Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90, 101; see also *Glendale Fed., supra*, 66 Cal.App.3d at p. 138 ["Election of remedies is a harsh doctrine and is currently looked upon with disfavor by courts and commentators."].)

his claim for damages to the exclusion of his claim for specific performance. (*Roam*, at p. 1039.)[18] The election of remedies doctrine accordingly does not apply here. The trial court erred in failing to reach the merits of Starflinger's claim for specific performance.

## DISPOSITION

The judgment is reversed, and this action is remanded with directions that the trial court hold further proceedings on Starflinger's claim for specific performance. Starflinger is awarded his costs on appeal.

---

[18] In light of the counsels' pretrial email correspondence and Starflinger's statement to the trial court during motions in limine, it would not have been reasonable for KBC to have understood Starflinger to have chosen to proceed *solely* on his claim for damages before the beginning of the jury trial. Indeed, at the conclusion of the jury trial, KBC took the position that an election was required *at that time*, implying that KBC understood no such election had *already* been made. We accordingly have no occasion to consider whether KBC suffered prejudice due to any choice by Starflinger to proceed solely on his claim for damages, as Starflinger never made such a choice. (*California Golf, supra*, 163 Cal.App.4th at p. 1066 [prejudice to the opposing party is required for a plaintiff to be estopped from selecting an inconsistent remedy that is different from a remedy previously elected].)

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.